## Mary Graham v. Elgin J. Slayton

[ 175 A.2d 809 ]

September Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 7, 1961

*Wilson, Keyser & Otterman* for the plaintiff.

*Finn & Davis* for the defendant.

**Shangraw, J.** This litigation results from a dispute as to the location of the dividing line between property owned by the plaintiff, and that owned by the defendant and Erwin Hoyt as co-owners. The plaintiff brought a bill in chancery seeking an injunction to restrain the defendant from cutting and removing trees off and from land alleged to be owned by her. The plaintiff also sought to recover treble damages under the provisions of 13 V.S.A. §3606.

A hearing was had below and findings of fact were made by the chancellor. A decree was entered granting a permanent injunction against the defendant and awarding the plaintiff actual damages of $568 plus costs, for the unlawful cutting by the defendant of certain timber growing upon lands of the plaintiff. The case is here on the defendant's exceptions to certain findings, and to the decree.

According to the defendant's claim his tract of land would contain from 60 to 65 acres. Placing the disputed line in accordance with the location urged by the plaintiff the defendant's lot would contain only 30 acres.

The properties in question are situate in Williamstown, Vermont, and located on the easterly side of the road leading to the plaintiff's farm from the Williamstown to Chelsea highway. Both parcels adjoin each other and have their origin in the real estate owned at one time, as one unit, by Irving C. Robinson. The chain of title by which the property, herein referred to as the Graham farm, came into the possession of the plaintiff is shown by plaintiff's exhibits 1 to 7 inclusive, and that of the defendant, known as the Slayton lot, by plaintiff's exhibits 8 to 14 inclusive. No issue is raised by either party concerning the chain of title to either parcel involved here.

On December 26, 1907 the administratrix of the Irving C. Robinson estate conveyed a portion of the Robinson premises to Isabel M. Putnam Phelps, a predecessor in title of the defendant, which parcel so conveyed is referred to in this opinion as the Slayton lot. The acreage of the lot so conveyed was not mentioned in this deed, nor in subsequent deeds of the defendant's chain of title, excepting the deed of warranty from Winston Churchill to Erwin Hoyt and Elgin Slayton dated September 15, 1953, in which the land conveyed is described as containing 30 acres, more or less.

On December 26, 1907 the administratrix of the Irving C. Robinson estate also conveyed the remainder of the Robinson farm to Henry A. Phelps, a predecessor in title of the plaintiff, excepting therefrom that part of the farm which on the same date was conveyed to Isabel M. Putnam Phelps. All subsequent deeds in the plaintiff's chain of title describe the remainder of the Robinson farm so conveyed as containing 200 acres, more or less, including the deed from Norman Graham and Maggie Graham to Rodney Graham, now deceased, and Mary Graham, the plaintiff, dated December 7, 1938.

The 1906 quadrennial appraisal book of the town of Williamstown and the grand list book for the year 1907 show the Robinson estate as possessed of 220 acres of land. The grand list book for the year 1908 lists the Graham property as containing 190 acres and the Slayton property as 30 acres of land. The 1910 quadrennial appraisal book also shows the Slayton property as containing 30 acres. The 1960 grand list shows the Slayton property as containing 30 acres, and Mary Graham as the owner of a 200-acre farm and buildings. Thus the acreage as indicated by the grand list and quadrennial appraisal books tends to correspond with and conform to the plaintiff's claim as to the acreage conveyed.

The plaintiff's property is located southerly and southwesterly of the Slayton lot. Plaintiff claims that the southeasterly boundary of the Slayton lot begins at a beech tree on a fence generally running north and south representing the easterly boundary of this lot; thence turning in a westerly direction 200 feet, more or less, to a stone pile; thence turning in a northwesterly direction and continuing to a point in the Williamstown-Chelsea highway five rods southerly of the northwest corner of this lot. This line was marked by the plaintiff by swatches of red paint placed on trees in 1960.

The defendant urges that the division line extends southerly and southwesterly of that claimed by the plaintiff, encompassing a somewhat triangular piece of land. He claims the following to be the correct line: That the southeasterly corner of his lot is defined by a maple tree and barbwire fence located a distance of 1,000 to 1,500 feet southerly of the above mentioned beech tree; thence westerly on this fence a distance of five rods westerly of the standing trees or timber; thence in a northwesterly direction to the Williamstown-Chelsea highway at a point five rods southerly of the northwest corner of this lot. The acceptance of the defendant's view would place the acreage of the Slayton lot at 70 to 73 acres, rather than 30 acres, more or less.

The controlling factual question is whether the southeast corner of the Slayton lot is represented by the beech tree, as claimed by the plaintiff, or the maple tree and barbwire fence which runs easterly and westerly, as claimed by the defendant.

In our disposition of exceptions to findings we have in mind that a finding must stand if supported by any substantial evidence, although there may be inconsistencies, or even substantial evidence to the contrary. *Metcalf Co.* v. *Crossroads, Inc.,* 121 Vt. 147,

150, 151 A.2d 307; *Gramatan National Bank* v. *Pierce,* 121 Vt. 406, 410, 159 A.2d 781. We must read the evidence in support of the findings, if reasonably possible. *New England Road Machinery Co.* v. *Calkins,* 121 Vt. 118, 120, 149 A.2d 734.

Findings Nos. 11, 18, 21 and 22 excepted to by the defendant read:

"(11) Donald Graham, brother of Rodney Graham, testified that he lived on the Graham farm from 1916 until 1938. He testified that there was never a fence between the two properties although a fence was maintained by the Grahams around what is now the Slayton lot. He described a pile of stones within an angle of two ledges as being the south boundary of the Slayton line and testified that trees were cut below that line by his father and above the line by M. W. Churchill, antecedent in title to Slayton. In 1951, he walked the line with Bill Graham and he testified that the south line of the Slayton property was as William Graham testified."

"(18) The Chancellor finds that at all times since 1938 the plaintiff and/or her deceased husband have claimed the Slayton south line to be substantially the same as the painted line set out by William Graham in the summer of 1960."

"(21) The Chancellor finds that the south line of the Slayton property is not as described by witness Farrington but rather as established by the painted swatches made this past summer by William Graham. The Chancellor further finds that this red painted line fulfills the requirements of the deeds in the defendant's chain of title in every substantial way. The Chancellor specifically finds that the east-west fence described by witness Bailey as establishing a back pasture, has no relevance to the actual south line of the Slayton property.

"(22) The Chancellor finds that the plaintiff and her predecessors in title have, by adverse possession, if not otherwise, fully established their claim to the boundary as now delineated by red swatches and that this line is the true and accurate divider between the Graham and the Slayton lots."

As we have said the gist of the controversy is the division line. The disputed area contains 30 to 35 acres. Findings 11, 18, and 21

all relate thereto and for the sake of brevity are here considered collectively.

M. W. Churchill became the common owner of both parcels, having acquired the Graham property in 1915, plaintiff's exhibit 3, and the Slayton lot in 1916, plaintiff's exhibit 10. The defendant primarily bases his claim to the disputed area on a description contained in a deed of the Slayton lot from Albert A. Sargent to M. W. Churchill, dated January 24, 1916, plaintiff's exhibit 10, wherein the southeasterly corner of this lot is described as a "barbwire fence running easterly and westerly and to the corner of the land now owned by the said M. W. Churchill; thence westerly on the said barbwire fence, and on the line of the said M. W. Churchill and to a point in said fence five rods westerly of the trees or standing timber as they now are and to the line of the said M. W. Churchill; * * *." A maple tree is standing at this southeasterly corner where the above described east-west fence commences.

Notwithstanding the fact that the defendant introduced other evidence in support of his claim, a review of the record clearly indicates that this description is entirely consistent with the plaintiff's claim and the facts as found by the chancellor. To summarize, William Graham, son of the plaintiff, testified that he, his father, and Winston Churchill went over the line together in 1950 or 1951 and blazed a few trees along the painted division line later set out by William in 1960. At the time they found old blazes and markings on certain trees along this line. Beginning at a beech tree and continuing west there was found an old maple tree with what appeared to be wire markings around its trunk. A number of spruce trees had been limbed up to a distance of seven or eight feet. There was a clearing along the southerly portion of the line. About five rods westerly of trees or standing timber was found a man-made monument of stones which were formerly piled around a painted stake. The stone pile was about two feet high. Blazed trees were found throughout the entire length of the division line. Limbed trees were also found in the course of the line leading northwesterly from the stone pile to the highway. No dispute arose concerning this division line until 1957, and it is apparent that this line had been honored by adjoining land owners since 1916.

Referring to finding No. 11, Donald Graham walked the line with his brother William in 1957, not in 1951 as found by the chancellor.

The date of this event has no particular significance. A review of the record clearly demonstrates that findings Nos. 11 and 18 are supported by the evidence.

 The defendant urges that finding No. 21 is a conclusion of law and cannot stand, claiming that the construction of the deed to the Slayton lot and its legal effect is a question of law rather than of fact. With this we disagree. Under the facts as presented the location of the division line was a question of fact to be determined on the evidence. *Viall* v. *Hurley,* 94 Vt. 410, 416, 111 Atl. 395; *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 446, 101 Atl. 151. Moreover, a conclusion of law is harmless when it is sustained by other facts found which are sufficient in law to support the conclusion. *Gramatan National Bank* v. *Pierce, supra,* 413; *McKinney* v. *Kelley,* 120 Vt. 299, 307, 141 A.2d 660, cert. den. 356 U.S. 972, 78 S. Ct. 1135, 2 L.Ed.2d 1147. Finding No. 21 is supported by the evidence, as well as other facts as found.

In view of the contents of findings Nos. 18 and 21 supporting the plaintiff's contention, that portion of finding No. .22 relating to adverse possession is surplusage and requires no comment. The defendant gains nothing by this exception.

 The intention of the parties, as gathered from the language used when applied to the premises, controls in giving construction to what is conveyed by a deed. *Parrow* v. *Proulx,* 111 Vt. 274, 277, 15 A.2d 835. *Cummings* v. *Black & Covell,* 65 Vt. 76, 25 Atl. 906. Generally, it may be said that a description which enables the boundaries to be determined will pass all the land and only the land within those boundaries, notwithstanding the call for quantity differs from the actual area of such land. 16 Am. Jur., Deeds, §289. But the quantity described may also be essential and may have a controlling influence in determining the identity of the premises where the other parts of the description are not sufficiently certain. *Parrow* v. *Proulx, supra,* 280; 8 Am. Jur., Boundaries, §63. The description in the deeds upon which the defendant relies is not sufficiently certain to support the claim that his property contains 60 to 65 acres, rather than 30 acres as claimed by the plaintiff.

 The defendant's exception to the judgment raises only the question as to whether the judgment is supported by the facts found.

*In re Estate of Boynton,* 121 Vt. 98, 100, 148 A.2d 115; *Dindo* v. *Cappelletti,* 116 Vt. 403, 405, 77 A.2d 840. The judgment is amply supported by the findings.

*Decree affirmed.*