### Alan S. Pareira v. William Wehner, et al.

[330 A.2d 84]

No. 199-73

Present: **Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)**

Opinion Filed December 3, 1974

*David C. Pendleton, Esq.*, Manchester Center, for Plaintiff.

*Matthew T. Birmingham, III, Esq.*, of *Glover & Fink*, Ludlow, for Defendants.

**Smith, J.** This is an appeal from a decision of the Bennington County Court granting judgment to the defendants for damages resulting from an acreage deficiency of 3.88 acres due to an incorrect description of land conveyed in a warranty deed granted by the plaintiff, Pareira, to defendants Wehner and Schalk.

The original action was brought by the plaintiff for the foreclosure of a mortgage against the defendants named above and others. The claims against the other defendants and their cross and counterclaims were disposed of by stipulation prior to hearing. Trial was had on the action of foreclosure and the named defendants' counterclaim alleging the acreage deficiency. The lower court dismissed, with prejudice, the foreclosure action and awarded defendants damages totaling $7,228.43, a figure arrived at by subtracting the mortgage indebtedness from the recovery defendants were found entitled to.

The warranty deed was dated June 24, 1969, and is recorded in the Winhall, Vermont, land records. It commences:

> Being a portion of the same lands and premises as was conveyed to the Grantor herein by Warranty Deed of Walter J. Kerwynn and Edith M. Kerwynn dated the 31st day of July, 1967, and recorded in Book 22, Pages 122–123 of the Town of Winhall, and therein described as follows:

There follows a metes and bounds description of the land, which is known as the "Stratton View Development". There is no need to reproduce the entire deed here, but for reasons shortly to become apparent we excerpt, as illustrative, that portion relevant to the northern border of the land conveyed by the deed.

> . . . an iron pipe marking the northwesterly corner of the land herein conveyed; thence about south 71° 53′ east along lands now or formerly of Whitney and lands now or formerly of Lightfoot 1,508.6 feet to an iron pipe marking the northeasterly corner of the parcel . . . .

After the conclusion of the metes and bounds description, the following paragraph appears: "The above description has been prepared from a survey map made by Charles H. Grant of Peru, entitled 'Stratton View Development', dated March 16, 1963." This survey map also was recorded in Winhall, Vermont.

After the defendants went into possession of the property, Mr. Wehner, who had done some surveying and could capably utilize a transit, discovered a discrepancy between the description of the northern boundary in the deed and its location on the ground. The defendants then hired Stuart Dauchy, a qualified and registered land surveyor, to prepare a new survey.

The plaintiff contends that the defendants, from the outset, should have had doubts about the accuracy of the northern border, because it was marked "unverified" on the Grant survey map. The trial court found, however, that no reference to this term or caveat with respect to this boundary line was carried forward into the description in the deed.

This warranty deed was one which particularly described the property purported to be conveyed by metes and bounds. Even if the allusion therein to the Grant survey can be considered as more than an acknowledgement of a preparatory source and construed as a reference the purchaser should check for possible modifications, it cannot be controlling. Such reference is a general description of the property. *Basso* v. *Veysey,* 118 Vt. 399, 403, 110 A.2d 706 (1954). "When the particular and the general description do not coincide, effect must be given to the particular description." *Basso* v. *Veysey,* *supra.* The defendants were justified in relying upon the particular description, set forth in metes and bounds, in the deed to them from the plaintiff.

The Dauchy survey, which the lower court found to be accurate, showed that 3.88 fewer acres were actually conveyed than one relying on the warranty deed would have expected. The plaintiff does not challenge the apportionment formula for damages where there has been a partial failure of title utilized by the lower court; rather, he contends that the court erred in finding that the Dauchy survey was accurate.

The location of a boundary line on the ground is a question of fact to be determined on the evidence. *Graham* v. *Slayton,* 122 Vt. 425, 430, 175 A.2d 809 (1961); *Viall* v. *Hurley,* 94 Vt. 410, 416, 111 A. 395 (1920). The accuracy and credibility of the Dauchy survey map, which was part of the defendants' evidence, locating such lines are, of course, also questions for the trier of fact and will not be overturned unless clearly erroneous, V.R.C.P. 52, even though there may be inconsistencies or substantial evidence to the contrary. *Graham* v. *Slayton, supra,* 122 Vt. at 427.

Here, the plaintiff offers no alternative boundary location accompanied by a claim of greater accuracy, but rather questions the thoroughness of Mr. Dauchy's investigation and the sufficiency of the evidence introduced in support of the survey. He cites no case that would support a holding that the evidence was so insufficient as to make the survey inadmissable as a matter of law. He attacks the survey as improperly motivated, that is, made for purposes of redesigning lots within the perimeter which the defendants were attempting to resell, but such a motivation would seem to furnish some further impetus

for ascertaining the perimeter accurately, to ensure that his employers', the defendants', title would not fail upon resale. At any rate, we find the plaintiff's showing inadequate grounds for holding the lower court's finding to be clearly erroneous.

█ As a second element of damages, the lower court awarded the defendants $3,000 for the survey and redesign of the development, most of which had been paid to Mr. Dauchy. The plaintiff does not challenge the findings that this amount was reasonable, but rather contests the award of any damages at all for this element. He contends that such damages are special rather than general and were not pleaded with the specificity required by V.R.C.P. 9(g). While the difference between general and special damages and the attendant rules of pleading have been described as "more apparent than real" and essentially a question of whether the opposition has sufficient notice to prepare a defense, V.R.C.P. 9, Reporter's Notes, we think the $3,000 award can be upheld as general damages.

█ Both parties agree that the general rule is that damages, to be recoverable, "must be the direct, natural result of the breach, and to have been in the contemplation of the parties . . . as a probable result of such breach." *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc.*, 123 Vt. 130, 138, 183 A.2d 230 (1962); *accord, Berlin Development Corp.* v. *Vermont Structural Steel Corp.*, 127 Vt. 367, 370, 250 A.2d 189 (1968). They part ways over the applicability of this general rule to the survey and redesign damages claim. The lower court found that "[t]he acreage deficiency necessitated the Dauchy survey and the redesign of the development" in its Finding No. 18.

"Whether the damages sought are the direct and natural result of the breach alleged is, of course, a question of fact." *Curtis Funeral Home, Inc.* v. *Smith Lumber Co.*, 114 Vt. 150, 155, 40 A.2d 531 (1945). Finding No. 18 is not clearly erroneous; the need to resurvey and redesign was the direct and natural result of the partial failure of title.

This is not to say that there cannot be damage claims so remote and so obviously without the contemplation of the

parties that they should be withheld from the jury. See *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc., supra,* 123 Vt. at 138. The instant claim, however, was a proper one for the factfinder even without being specially pleaded. For the "contemplation" requirement does not require evidence that the parties actually discussed or otherwise actively considered each potential damage claim; it is sufficient that damages "be such as the parties may fairly be supposed to have considered." *Id.* We believe these parties may fairly be supposed to have considered damages for redesign expenses necessitated by any failure of title. This land conveyed was known as "Stratton View Development", had in fact been so denominated at the time it was conveyed to the plaintiff in the case at bar, and had, since at least 1963, been surveyed and designed for subdivision.

*Judgment affirmed.*