### Joyce Cliche v. Arnold Cliche

[466 A.2d 314]

No. 82-157

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed September 6, 1983

---

*Gary D. McQuesten* of *Valsangiacomo & Detora, P.C.,* Barre, for Plaintiff-Appellant.

*William Dibbern,* Barre, for Defendant-Appellee.

**Billings, C.J.** This cause has twice been before our Court relative to the order of support, alimony and arrearages arising out of the 1980 divorce of the parties. In *Cliche* v. *Cliche,* 140 Vt. 540, 442 A.2d 60 (1982), we held that in a petition to modify a divorce decree based on a stipulation, defendant had to show not only a change in circumstances, 15 V.S.A. § 758, but also circumstances intervening beyond the expectation of the agreeing parties, fraud, impossibility of performance, or unconscionable advantage.* As defendant failed to make such showing, this Court reversed the granting of his motion to modify. Prior to the filing of that opinion, however, defendant filed a motion for relief from judgment based on V.R.C.P. 60(b)(6), claiming that the underlying stipulation upon which the divorce order relied was unconscionable.

After hearing on that motion, the trial court issued findings of fact, conclusions of law, and its order. Holding that plaintiff had taken unconscionable advantage of defendant when she and her attorney prevailed upon him to sign the final stipulation, the court below reduced the support obligation, eliminated the alimony payments, and nullified a prior order on arrearages defendant owed. Plaintiff appeals, claiming (1) that the findings of fact, conclusions of law and order are unsupported by the evidence; (2) that defendant's motion for relief from judgment is barred by the doctrine of res judicata; and (3) that the trial court abused its discretion in relieving defendant of the effects of the original decree and subsequent arrearage order.

The facts as found below are as follows. In 1965, the parties were married, commencing a union which the court below characterized as "doomed from the start." Throughout the marriage, defendant regularly worked 15 to 20 hour days: shuttling between at least three different janitorial jobs, defendant labored from 3:00 in the afternoon until 7:00 in the morning. The court also characterized defendant as "totally dominated by his wife." He turned every paycheck over to her, and she in turn controlled the family finances and gave him a weekly allowance.

---

* Pursuant to the amendment to 15 V.S.A. § 758, now in effect, 1981, No. 247 (Adj. Sess.) § 13, eff. July 1, 1982, a judgment based on a stipulation may now be modified upon a showing only of changed circumstances.

When the parties separated in 1979, defendant was earning between $20,000 and $21,000 annually from his various jobs; however, the court noted that "defendant's family life had completely disintegrated."

> [Defendant's] work schedule was such that it was virtually impossible for him to maintain a meaningful relationship with anyone in the family. His wife held him in contempt and felt he was unfit to be with the children. She still feels that way. The animosity, hostility and contempt against defendant is so great he has not seen his children since the divorce. The plaintiff testified that the children do not want to see him.

On November 7, 1979, defendant signed a temporary stipulation, drafted by plaintiff's attorney. Under that agreement, plaintiff was given temporary custody of the three children, with visitation rights granted to defendant; plaintiff was also granted temporary and exclusive use and possession of their home, all income from the parties' rental property, and exclusive right to the proceeds of a pending personal injury settlement (which later amounted to $15,000). Defendant was to turn over all his earnings to plaintiff, who in turn was to pay him $30.00 per week support. Defendant was awarded temporary use of their car and motorcycle. The court found that, in order to survive, defendant went to live with his mother.

Two weeks after signing the temporary stipulation, "plaintiff prevailed upon the defendant" to sign a final agreement which incorporated most of the provisions of the temporary one, and which became part of the May 1980 divorce order. The only major additions in the final stipulation were the following: plaintiff was granted both the parties' home and their rental property; defendant was permitted to keep his salary, but was required to pay plaintiff $25.00 per child weekly in child support, and $75.00 weekly alimony; defendant was permitted to claim one child as a dependent for income tax purposes, while his wife claimed the other two; and plaintiff was granted exclusive right to the proceeds of the pending tort settlement.

On that same day defendant also signed an affidavit, prepared by plaintiff's counsel, which provided as follows:

I, Arnold Cliche, hereby acknowledge that the signing of the Final Stipulation dated November 21, 1979 was of my own free will.

I further acknowledge that I have been advised of my right to review all of the provisions included therein with an attorney, and hereby expressly waive that right.

I hereby acknowledge that the provisions contained in the Final Stipulation of November 21, 1979 constitute a fair and equitable distribution of the marital property. It is my wish that the terms of the Final Stipulation dated November 21, 1979 be incorporated into a final decree of divorce to be entered by the Washington Superior Court.

In February of 1982, two years and two months later, defendant filed his motion for relief from judgment, alleging that the stipulation was "unconscionable because of the number of hours per day the defendant had to work in order to meet the obligations of the order with respect to child support and alimony." By that time he had, for health reasons, ceased working at two of his three jobs; in his third job, he worked approximately 15 hours per day, taking home $145.00 weekly. He lived with his girlfriend in a subsidized apartment, and sent his wife $45.00 per week in child support. In the meantime, plaintiff had gotten a part-time job which netted $90.00 weekly. In addition, she had acquired the $15,000 tort settlement, as well as the marital property granted to her at the time of the divorce.

After hearing defendant's Rule 60 motion, the court concluded that the stipulation was "patently unfair and unconscionable . . . for the benefit of a family who despised [defendant]." The court further found, citing *Cliche* v. *Cliche, supra,* 140 Vt. at 542, 442 A.2d at 61 (quoting *Braine* v. *Braine,* 127 Vt. 211, 213–14, 243 A.2d 797, 799–800 (1968)), that defendant had "demonstrated by 'especially explicit exposition' that the plaintiff took unconscionable advantage of him when she prevailed upon him to sign" the stipulation and affidavit. Based on these findings and conclusions, the court terminated the alimony obligation, reduced the child support to $20.00 per week, and eliminated defendant's obligation to pay the more than $3,000 arrearage on the original divorce order.

■■ Turning to plaintiff's first claim, we note that findings of fact will not be set aside unless, taking the evidence in the light most favorable to the prevailing party and excluding the effects of modifying evidence, they are clearly erroneous. V.R.C.P. 52; *Ruhe* v. *Ruhe,* 142 Vt. 429, 431, 457 A.2d 628, 629–30 (1983). Further, where the evidence is in conflict, such findings will stand even if the evidence predominates against them; only where the contrary proof is so overwhelming that there is no reasonable basis upon which findings can stand will they be set aside. *Berard* v. *Berard,* 140 Vt. 537, 539, 442 A.2d 49, 50 (1982) (citing *Mandigo* v. *Mandigo,* 128 Vt. 446, 450, 266 A.2d 434, 436 (1970)). Our review of the record undertaken above indicates sufficient evidence to support the trial court's findings and conclusion that plaintiff took unconscionable advantage of defendant in the execution of the final stipulation, especially in light of the fact that defendant was unrepresented at the time. As such, plaintiff's first claim must fail.

■■ Plaintiff's second claim is that, since the issue of the validity of the underlying stipulation could have been raised either at the divorce hearing itself or in defendant's motion to modify, defendant is now barred by the doctrine of res judicata from raising it in his Rule 60(b)(6) motion. In this regard we note that relief from judgment under V.R.C.P. 60(b)(6) is, by its very nature, invoked to prevent hardship or injustice and thus is to be liberally construed and applied. See, e.g., 11 C. Wright & A. Miller, Federal Practice and Procedure § 2864 (1973). For these reasons, "the doctrine of 'res judicata does not preclude a litigant from making a direct attack [under Rule 60(b)] upon the judgment before the court which rendered it.' " *Jordon* v. *Gilligan,* 500 F.2d 701, 710 (6th Cir. 1974), *cert. denied,* 421 U.S. 991 (1975) (quoting 1B Moore's Federal Practice ¶ 0.407, at 931 (2d ed. 1973)). Thus, the doctrine of res judicata is no bar to motions brought pursuant to this rule.

■ We turn then to defendant's final claim, that in modifying the original decree and relieving defendant of the effects of a subsequent arrearages order, the trial court abused its discretion. A motion for relief from judgment is addressed to the

sound discretion of the trial court, and is not subject to appellate review unless it clearly and affirmatively appears on the record that such discretion was withheld or abused. *R. Brown & Sons, Inc.* v. *International Harvester Corp.*, 142 Vt. 140, 143, 453 A.2d 83, 85 (1982); *Zinn* v. *Tobin Packing Co.*, 140 Vt. 410, 414, 438 A.2d 1110, 1113 (1981).

In exercising such discretion, the court below is to be guided by accepted legal principles applied in light of all the circumstances, 7 Moore, *supra*, ¶ 60.27[1], at 342–43, bearing in mind that Rule 60(b) is to be given liberal construction. *Id.* Here the trial court, after full hearing, determined that the terms of the original divorce order were based on an unconscionable stipulation. As such, the court relieved defendant of the effects of that order by modifying it "upon such terms as are just," V.R.C.P. 60(b), and entering a new order in light of the evidence before it. In so doing, it does not appear that the trial court either abused or withheld its discretion.

Although not cited by either party, we note that on similar facts this Court held that a trial court ruling on a Rule 60(b) motion could only vacate an improper judgment and remand for new trial, not modify the judgment order in any way. *Smith* v. *Smith*, 139 Vt. 234, 427 A.2d 378 (1981). However, where, as here, it appears on the record that a full evidentiary hearing was held on disputed issues at the time of the Rule 60(b) hearing, we will not require that a second, separate hearing be held. See, e.g., *American Employers Insurance Co.* v. *Sybil Realty, Inc.*, 270 F. Supp. 566, 569–70 (E.D. La. 1967); see also *Finucane* v. *Bindczyck*, 184 F.2d 225, 227 (D.C. Cir. 1950), *reversed on other grounds*, 342 U.S. 76 (1951). To the extent that such holding is inconsistent with *Smith* v. *Smith, supra,* that case is overruled.

*Affirmed.*