# Town of Wolcott v. Weldon A. Behrend, Anne H. Behrend, Robert Davis & Richard Gutzmann

[519 A.2d 1156]

No. 84-227

Present: Allen, C.J., Hill, Peck and Gibson, JJ., and
Barney, C.J. (Ret.), Specially Assigned

Opinion Filed November 14, 1986

*Sargent & White*, Morrisville, for Plaintiff-Appellant.

*Robert W. Davis* of *Chimileski & Associates*, Newport, for Defendants-Appellees.

**Hill, J.** Plaintiff-appellant Town of Wolcott brought this action seeking treble damages against all defendants under 13 V.S.A. § 3606 for the unlawful cutting of timber on property owned by the town. The town alleged that the wrongful cutting had taken place on two different occasions—once in 1979 and once in 1980. The Behrends were the only defendants who answered the complaint.[1] Trial was before the court, and it found that the town owned the land as alleged and that defendants had wrongfully cut the timber. The court denied all damages to the town, however, because it failed to prove the value of timber cut in 1979, and because ownership rights to the timber cut in 1980 had been released by the town through the actions of a selectman. The town appeals that portion of the trial court's judgment denying damages. The defendants cross-appeal on the issues of whether the town owns the land in question and whether the timber was wrongfully cut. We affirm the trial court's judgment on the liability issue, reverse the judgment relative to damages for both the 1979 and 1980 timber cuts, and remand for further hearing on the issue of damages.

The controversy centers on a dispute over the location of several adjoining "gore lots" running along the northern boundary of the Town of Wolcott. The town claims that it owns these gore lots and that the cutting took place on them. It is undisputed that the Behrends' northern property line abuts the southern boundary of the gore lots and that the northern boundary of the gore lots is

---

[1] Defendants Gutzmann and Davis did not answer plaintiff's complaint, and separate default judgments were entered against them.

contiguous with the boundary line between the Towns of Wolcott and Craftsbury. There was conflicting evidence, however, about the precise locations of the Behrend/gore lot boundary and the Wolcott/Craftsbury town line.

In January of 1979, the Behrends hired Robert Davis to cut timber for them on the northern part of their property. At that time, there was some question about the precise location of the Behrends' northern boundary. Believing he owned the land and the timber thereon, Walter Behrend instructed Mr. Davis to cut up into property which he knew the town claimed was the gore lots.

In 1980, the Behrends hired Richard Gutzmann to cut more timber off their land. As he had done with Davis, Behrend instructed Gutzmann to cut onto the disputed area because he felt he owned the land and the trees. Several weeks later, a Wolcott selectman discovered Gutzmann logging on the land and asked him to stop. According to Gutzmann's testimony at trial, the selectman told him the land belonged to the town but that he could "pick up what was already cut." The town then brought suit under 13 V.S.A. § 3606 for unlawful cutting of timber.

## I.

The plaintiff first challenges the trial court's denial of damages for the first of two cuts because the town failed to prove the value of timber cut by Davis in 1979. The court found that the only testimony on damages related to timber cuts in 1978 and 1980. The appellant argues that this finding is clearly erroneous, and we agree.

■ ■ On appeal, this Court will overturn findings of fact when, taking the evidence in the light most favorable to the prevailing party and excluding the effects of modifying evidence, they are clearly erroneous. *Cliche* v. *Cliche*, 143 Vt. 301, 306, 466 A.2d 314, 316 (1983); V.R.C.P. 52. Plaintiff's expert witness testified that he was certain that there had been only two timber cuts in the disputed area in recent times. Defendant Davis testified that he cut during a period commencing in January of 1979, and Gutzmann testified that he cut during 1980. There was no evidence introduced by either party that any cutting actually took

place in 1978.[2] Furthermore, when asked to approximate the dates of the cuttings, the plaintiff's expert stated that one was in 1980 and another was "prior to that," "around 1978," or "approximately two years previous [to the 1980 cutting]." The expert also referred to the first cutting as the "78/79" cutting. All of the evidence adduced at trial relating to the first of two cuts, therefore, could be understood to relate to a cut which took place in early 1979. In the absence of any evidence to support its conclusion, and in light of the other evidence, it was error for the trial court to find that the expert's testimony related to timber cut in 1978. The evidence, to the contrary, supports the conclusion that the expert was testifying merely to the 1978 market value of stumpage cut sometime around 1978. On remand, therefore, the trial court will have to assess damages for the 1979 cut.

## II.

Plaintiff's second argument is that the trial court erred by denying it damages for the logging in 1980 on the theory that the town, through the actions of a selectman, had given away the timber cut in 1980. The evidence was that when a Wolcott selectman, Eugene Gates, discovered Mr. Gutzmann logging on the disputed property in 1980, he told him to stop. In addition, Gutzmann testified that Gates told him he could "pick up what was already cut." Defendants argue that the evidence supports the conclusion that selectman Gates was acting on behalf of the whole board. In this regard, defendants rely on a line of cross-examination testimony by Gates in which both he and the cross-examiner repeatedly referred to the town as "they" when discussing the actions of selectman Gates. It was clear from the evidence, however, that Gates was the only selectman at the site. Moreover, there was no evidence that Gates was authorized to act for any of the other selectmen. Under these circumstances, we must conclude that Gates was acting independently of the other selectmen. Since there was no evidence that Gates was acting on behalf of the

---

[2] The trial court expressly found that "[t]here was no evidence that Defendants cut or caused to be cut any timber in 1978." The plaintiff's expert, on whose testimony the court based its finding regarding the occurrence of a 1978 cut, had not observed the first cut. Nor did he have any personal knowledge about when it took place. Moreover, his testimony was not directed toward the establishment of the date of the first cut. Rather, his testimony related solely to damages and was based on an estimation of when the first cut took place.

board of selectmen as a whole, the effectiveness of the release of ownership rights depends on whether a single selectman, acting without the knowledge or concurrence of any other board members, can bind the town in such a manner.

We have held previously, after a review of the statutes regulating local government in Vermont, that the "Legislature intended that selectmen should and could function as a board." *State* v. *Baldwin*, 116 Vt. 112, 113, 70 A.2d 242, 243 (1950). We also stated in *Baldwin* that "in most instances in order for . . . acts [of the board of selectmen] to have any force they must . . . function [as a board.] When board action is required it must be by a majority, at least, of the members." *Id.* at 114, 70 A.2d at 243; see also *Goslant* v. *Town of Calais*, 90 Vt. 114, 123, 96 A. 751, 755 (1916) ("nothing said by the selectmen severally, each acting independently of the others or either of them, could affect the town."). Release by the town of a valid ownership claim to timber is clearly an action within the scope of the board's supervisory authority. We hold, therefore, that action by a majority of the board of selectmen is necessary for the effective release by the town of an ownership claim to timber.

In sum, the trial court's denial of damages for both the 1979 and 1980 cuts was error. On remand, the court must ascertain the appropriate damage award under 13 V.S.A. § 3606.[3]

## III.

Defendants' cross appeal concerns whether the two cuttings were wrongful under 13 V.S.A. § 3606. Defendants first argue that plaintiff failed to prove that either cutting was "without leave," as is required in an action under § 3606. *Davis* v. *Cotey*, 70 Vt. 120, 121, 39 A. 628, 628 (1897). We have held, however, that "[t]o justify a threefold recovery under the statute the plaintiff was required only to prove that the defendant cut timber on plaintiff's land." *Amey* v. *Hall*, 123 Vt. 62, 69, 181 A.2d 69, 74 (1962) (citing *Davis* v. *Cotey, supra*, 70 Vt. at 121, 39 A. at 628). Thus, contrary to defendants' argument, it is sufficient if the plaintiff proves that defendants in fact cut timber on plaintiff's land. *Id.* In this case, defendants Davis and Gutzmann both ad-

---

[3] At oral argument, the plaintiff conceded that treble damages, although generally available under 13 V.S.A. § 3606, are not appropriate in this case. On remand, therefore, the trial court should restrict the damage award to actual damages.

mitted that they cut timber on land the trial court found to be owned by plaintiff. This evidence satisfied plaintiff's burden of proof under the statute.

The defendants' second argument is that the trial court's judgment on liability must be reversed because the evidence does not support the finding that plaintiff proved ownership of the timber or the gore lots on which defendants cut the timber. The trial court found that "[p]laintiff proved by a preponderance of the evidence that it owned the timber" and that "[t]he Town owns the Gore lots." We will not overturn these findings unless they are clearly erroneous. *Cliche* v. *Cliche, supra*, 143 Vt. at 306, 466 A.2d at 316.

Plaintiff's evidence on title to the gore lots was a 1939 quitclaim deed to the town conveying the gore lots, other deeds in the plaintiff's chain of title, and the testimony of Arlo Sterner, whose testimony relative to title was accepted by the court as expert testimony. Mr. Sterner testified on the issue of the town's ownership of the land, concluded that the town owned the gore lots, and based his opinion on his analysis of the title history of the land in question and his personal surveying work in the area.

■ Defendants correctly note that a quitclaim deed conveys to the grantee only the interest which the grantor had at the time of the conveyance. *Munson* v. *Goodro*, 124 Vt. 282, 284, 204 A.2d 126, 128 (1964); *Blondin* v. *Brooks*, 83 Vt. 472, 477, 76 A. 184, 186 (1910). It follows, therefore, that one way to prove ownership of property acquired through a quitclaim deed is to prove that the grantor had title to the land described in the quitclaim deed. Plaintiff introduced a 1904 warranty deed of H. S. Tolman conveying the gore lots to J. E. Davis, predecessor in title to plaintiff's grantor. Plaintiff also introduced a decree of distribution from the Lamoille Probate Court transferring the gore lots to the heirs of J. E. Davis, who later conveyed the gore lots to plaintiff by quitclaim deed in 1939. Based on all of the evidence, the trial court's conclusion that the town owns the gore lots is not clearly erroneous.

Defendants' two remaining arguments are similarly without merit. The town's claim to ownership of the timber was not defeated by its failure to exclude the possibility that the timber rights had not been conveyed. Proof of ownership of real property carries with it the implication of ownership of nonsevered timber for purposes of 13 V.S.A. § 3606. See *Stratton* v. *Lyons*, 53 Vt.

641, 643 (1879) ("Land includes not only the ground or soil, but everything attached to it, above or below."); see also *Northern Pacific Railroad* v. *Paine*, 119 U.S. 561, 564 (1887) ("Standing timber is a part of the realty and goes with its title or right of possession."). Defendants introduced no evidence to challenge plaintiff's ownership of the timber. Accordingly, their argument must fail.

Lastly, defendants argue that the town did not adequately demonstrate that it had title to the land on which the cutting took place because of discrepancies between deed descriptions, physical field evidence, and map illustrations of the location of the Wolcott/Craftsbury town line. In essence, the defendants dispute the trial court's finding regarding the locations of their northern property line and the Wolcott/Craftsbury town line. The trial court found that:

> Defendants Behrend have no legal claim in the Gore lots by deed or adverse possession and it had been acknowledged by them that establishment of the Town line effectively establishes the location of the Gore lots and in turn, the Behrends' northerly boundary is established. That northerly line of Behrends is clearly marked by flags, blazes and other physical evidence in the field.
>
> The Craftsbury-Wolcott Town line is marked in the field by old blazes, old fences, stone markers and other physical evidence in the field. The line has long been established in the field and conforms to deed records.

The location of a boundary line between properties, when it is disputed in an action under 13 V.S.A. § 3606, is a question of fact. *Graham* v. *Slayton*, 122 Vt. 425, 430, 175 A.2d 809, 812 (1961); *Taylor* v. *Blake*, 109 Vt. 88, 91, 191 A. 923, 925 (1937). Moreover, the trial court's finding on this point "must stand if supported by any substantial evidence, although there may be inconsistencies, or even substantial evidence to the contrary." *Graham* v. *Slayton, supra*, 122 Vt. at 427, 175 A.2d at 811.

Defendants correctly point out that the absence of a precise deed description of the gore lots in plaintiff's chain of title raises some question about the location of the gore lots, and, in turn, some question about the town's ownership claim to the land on which the cutting took place. If, for instance, the gore lots are

located at a point more northerly than as found by the trial court, then defendants may not have cut on land owned by the plaintiff.

In the 1939 quitclaim deed to the town, and throughout plaintiff's chain of title, the disputed property is described only as "the gore lands between lot number 68 and the town line." The parties agree, however, that the "town line" referred to in the deeds in plaintiff's chain of title is the Wolcott/Craftsbury boundary and that the gore lots lie between the Wolcott/Craftsbury town line and the northern boundary of the Behrends' property.

The plaintiff introduced the expert testimony of Richard Townes, a licensed land surveyor, which related to the location of the northern boundary of lot 68, which is the northern boundary of defendants' property. Plaintiff also introduced the expert testimony of another land surveyor, Arlo Sterner, which related to the location of the Wolcott/Craftsbury town line. Both experts relied on deed descriptions and numerous surveys, made by themselves and others, as the basis for their opinions as to the location of these boundary lines. The defendants' evidence consisted of local and state road maps, as well as United States Geographical Survey maps and photographs, and challenged plaintiff's evidence relating to the location of the Wolcott/Craftsbury town line. Through this evidence the defendants sought to prove that the Wolcott/Craftsbury town line was located at a more northern point. According to defendants, if the town line were located at a more northern point, the gore lots would be situated further north, and the cutting would not have taken place on land owned by the Town of Wolcott.

■  Under the applicable standard of review, we conclude that there was substantial evidence to support the trial court's conclusions with respect to the location of both boundaries, despite the presence of credible conflicting evidence. *Graham* v. *Slayton, supra,* 122 Vt. at 427, 175 A.2d at 811. In addition to the testimony of plaintiff's experts, there was ample evidence in the field, in the form of old blazes, old fences, stone markers and other physical evidence, to support the court's finding as to the location of the Wolcott/Craftsbury town line. There was no evidence of a marked boundary at the town line claimed by defendants. "In these circumstances the lines and monuments actually marked and recognized on the ground in the distant past will constitute the survey." *Amey* v. *Hall, supra,* 123 Vt. at 68, 181 A.2d at 73. Moreover, the trial court could give more weight to plaintiff's evi-

dence on the location of the Behrends' northern property line than to defendants. Its findings and conclusions were amply supported by the evidence.

*Judgment affirmed as to liability; reversed and remanded for further proceedings consistent with the views expressed in this opinion.*