*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2011-160

NOVEMBER TERM, 2011

| | | |
|---|---|---|
| Anne-Marie Matthews | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Chittenden Unit, |
| | } | Family Division |
| | } | |
| Thomas Matthews | } | DOCKET NO. 769-9-09 Cndm |

Trial Judge: Matthew I. Katz

In the above-entitled cause, the Clerk will enter:

Father appeals the court's custody decision following a contested divorce. Father argues that the court erred in granting mother sole parental rights and responsibilities and in adopting mother's proposed parent-child contact schedule. We affirm.

The parties were in a long-term relationship and had a child in June 2000. They married in 2004, and separated in April 2008. At the time of the final hearing, father was 63 and mother was 43. When the child was a baby, mother was the primary caregiver. Mother returned to work when the child was two, at first on a part-time basis. She now works full-time at a restaurant as a store manager. Evidence was presented at trial concerning mother's use of alcohol. The court found that the evidence was stale and insufficient to demonstrate that mother still drinks to excess or that it "is an ongoing issue in her day-to-day life or a detriment to her exercise of custodial responsibility."

During the parties' relationship, father worked full-time at Green Mountain Power. Father retired early, and his income now includes his retirement, social security payments, rental income, and some investment income. He receives over $900 per month as a social security dependency payment for the child. He enjoys hunting and goes on extended hunting trips to other states.

Following separation, the parties' stipulated to a shared custody arrangement where each parent had the child for equal amounts of time. Father took the parties' son on a three-week trip out west, which the court found was a "wonderful experience" for the child. The court found, however, that the trip revealed several aspects of the parties' respective parenting traits. First, the trip was made possible by mother's willingness to give up some of her time with the child. Second, father demonstrated insensitivity for his son's need to see and communicate with his mother by failing to explain the limits of a prepaid cellphone, which meant that the minutes were used within the first few days of the trip and afterwards the child could not communicate with his mother. Additionally, father failed to understand why mother requested to see the child immediately upon their return. The court found also that father has generally displayed disrespect for mother's relationship with her son by scheduling special classes and dentist appointments during mother's time.

At the final hearing, both parties testified and requested sole parental rights and responsibilities. Father proposed a parent-child contact schedule where he would have the child five days a week. Mother's counsel explained that he would submit a detailed schedule on behalf of mother, but in answer to counsel's question of what type of contact mother proposed, mother testified that she would like the child to be with each parent half of the time. Both parties submitted requests for findings. Mother's schedule proposed that the child be with her four nights a week and father three nights per week.

The court issued its findings in a written order in January 2011. In considering custody, the court examined the factors listed in 15 V.S.A. § 665(b). On most of the factors, the court found that the parties were relatively evenly balanced. The court found that neither parent was the primary caregiver and both were qualified to provide care and guidance to their son. The court specifically rejected father's argument that mother's alcohol use diminished her ability to parent. The court determined that that "the tipping point between the parties is their respective ability to foster a good relationship with the noncustodial parent." On this point, the court found that mother had demonstrated flexibility and respect for father's time with his son, whereas father had shown an inability to foster a good relationship with mother. The court also found that the child has a strong relationship with his maternal grandmother. In light of mother's superior ability to communicate with father and foster a positive relationship with father, the court granted mother sole parental rights and responsibilities.

The court directed counsel to agree on the form of a decree, and submit a proposed order. In March 2011, father moved for appointment of a guardian ad litem to make sure that the child's best interests were represented in determining parent-child contact. The court denied the request, noting that the issue had already been tried. The parties were ultimately unable to agree and submitted competing proposed orders. Father's proposal maintained the temporary arrangement of equal time on a two-week rotating schedule. Additionally, father requested that the order stipulate that mother should use the child's social security dependency payment to pay the child's health insurance, income taxes, account fees, property taxes, school taxes, school lunches, savings for braces, and other activities. The court adopted mother's proposed order, granting father parent-child contact from Wednesday morning to Saturday at 6:00 p.m. The signed order erroneously indicates that the parent-child contact schedule was stipulated to by the parties. Father appeals.

In his first argument, father challenges multiple findings, arguing that they are not supported by the evidence and therefore that the court erred in awarding mother sole legal and physical rights and responsibilities. Father argues that the following findings are not supported by the evidence: that mother's alcohol use is not detrimental to her exercise of custody, that mother maintains an orderly household, that father had not taken his son on any hunting trip, and that father obstructed mother's time with their child. Upon review of the record, we find no merit to this argument. For the most part, father's argument asks this Court to reweigh the evidence in his favor. This we will not do. It is exclusively the province of the trial court to assess the credibility of the witnesses and weigh the persuasiveness of the evidence. Chase v. Bowen, 2008 VT 12, ¶¶ 15, 36, 183 Vt. 187; see also Bonanno v. Bonanno, 148 Vt. 248, 250-51 (1987) ("We have consistently given due regard to the unique position of the trial court to assess the credibility of witnesses and the weight of all the evidence presented."). Moreover, the family court has broad discretion to determine a child's best interests based on the relevant statutory factors. Chase, 2008 VT 12, ¶ 34. We will not set aside individual findings "unless they are clearly erroneous," and we will not deem findings insufficient unless "we are left to speculate as to the basis of the trial court's decision." Bonanno, 148 Vt. at 250, 251. In determining whether findings are clearly erroneous, we consider the evidence in the light most favorable to the

2

prevailing party and exclude the effects of any modifying or conflicting evidence. Cliche v. Cliche, 143 Vt. 301, 306 (1983).

Given this standard, father's arguments are unavailing. Father's primary challenge is that the evidence does not support the court's finding that evidence of mother's alcohol abuse was either stale or exaggerated, and that her alcohol use was not a detriment to her exercise of custodial responsibility. Father points to an incident in July 2008–just after the parties separated–when police were called to mother's residence and she was ultimately taken to detox, as well as the facts that mother did not seek treatment for alcohol abuse, and continues to use alcohol. These facts notwithstanding, the court was persuaded by other evidence, including that mother has held a steady job for two years without any alcohol related absences, has had no recent problems with drinking and drinks only a few times a month. In addition, the court was persuaded by the fact that father entrusts the child to mother's care for weeks at a time without concern for the child's safety. These facts support the court's findings that mother's use of alcohol does not adversely affect her daily life or her ability to parent.

In addition, with the possible exception of the finding that father never took the child on a hunting trip, there is evidence in the record to support the remainder of the challenged findings. The evidence supports the court's findings that mother keeps an orderly household and that father undermined mother's relationship with their son by scheduling appointments during her time and failing to provide an opportunity for him to communicate with mother during their vacation. Furthermore, while one witness testified that the child was hunting with father on one occasion, the record supports the court's finding that father did not bring his son along on his extended hunting trips. Regardless, this finding was not critical to the court's decision, and any error was therefore harmless. The court adequately explained its decision to award rights and responsibilities to mother. "Where the family court's award of custody reflects its reasoned judgment in light of the record evidence, its decision may not be disturbed." Kasper v. Kasper, 2007 VT 2, ¶ 5, 181 Vt. 562 (mem.).

Next, father argues that the court abused its discretion in adopting mother's parent-child contact schedule. According to father, the court was required to hold another evidentiary hearing before adopting a contact schedule that deviated from the temporary contact order. We conclude that the court did not abuse its discretion in adopting a parent-child contact schedule without an additional evidentiary hearing. The parties submitted lengthy evidence during a one-day trial primarily concerning the best interests of the child, and no additional evidence was required. While the adopted schedule reduced father's weekly overnights with his son, there was no vested interest in the temporary schedule. In fact, it was evident at the time of trial that the schedule would likely change since the parties had not agreed to share custody. Father sought to change the temporary schedule, proposing instead that the child spend five nights a week with him, and he testified at trial that his son did not care for the temporary arrangement. The trial evidence and the court's findings were sufficient to support the resulting contact schedule. See Bancroft v. Bancroft, 154 Vt. 442, 449 (1990) (concluding that court's findings on custody were sufficient to support visitation order); see also Heffernan v. Harbeson, 2004 VT 98, ¶¶ 14-15, 177 Vt. 239 (recognizing that family court has broad discretion in custody matters).

We further reject father's contention that the contact schedule violates the Legislature's directive that it is in his son's best interest "to have the opportunity for maximum continuing physical and emotional contact with both parents." 15 V.S.A. § 650. While father may not have as much time with the child as mother does, he has been granted substantial contact with his son and the schedule does not contravene the statute. See Bancroft, 154 Vt. at 449 (holding that

3

visitation schedule that granted father fifty percent of children's time on weekends and during school vacations and twenty-five percent overall "did not offend § 650").

Father also asserts that it was error for the court to designate that the parties stipulated to the order when father opposed it. While error, the court's failure to strike the stipulation wording from the order was harmless. The court and the parties were well aware of father's objection and no prejudice resulted from the court's failure to omit this language from the order.

Finally, father argues that the court erred in failing to designate how mother should spend the dependent social security payment. There was no error. The court granted mother sole legal and physical parental rights and responsibilities. Therefore, mother has the right "to determine and control various matters affecting a child's welfare and upbringing," including his education, as well as his medical and dental care. 15 V.S.A. § 664(1)(A). Therefore, mother has authority to decide how the payments will be spent, and no order from the court is required.

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Brian L. Burgess, Associate Justice

4