# H. Grace Ward v. Lewis R. Ward

[583 A.2d 577]

No. 89-312

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed October 5, 1990

*Williams and Green,* Morrisville, for Plaintiff-Appellant.

*Edward B. French, Jr.,* of *David B. Stackpole Law Offices,* Stowe, for Defendant-Appellee.

**Dooley, J.** Plaintiff wife appeals from a trial court judgment granting a divorce, alleging that the court failed to grant her an adequate portion of the marital estate, chose the wrong date for valuation of the parties' home, failed to distribute certain rental income to which she was entitled, and dismissed improperly her additional claims for assault and battery. We reverse on the issue of the property valuation date and otherwise affirm.

The parties were married in 1976, after signing an antenuptial agreement in which they waived all claims to solely held property or separate maintenance. They separated in June 1986, and plaintiff filed for divorce a month thereafter. After the case was filed, the court granted plaintiff's motion to amend her complaint to include claims for assault and battery. Defendant thereafter counterclaimed for divorce and for damages for assault and battery and emotional distress.

At the time the action was filed the sole asset owned jointly by the parties was their share of a residence in Hyde Park, which they held together with two of the defendant's children. Defendant had paid about $11,000 of his own money for their interest in the property and, according to the trial court, had spent about two thousand hours of his time renovating it. Plaintiff had contributed no funds and about one hundred hours of her own time helping defendant with the construction.

The marriage was a tumultuous and sometimes violent one. The trial court's findings detail defendant's assaultive conduct toward plaintiff, together with a full account of plaintiff's own behavior and her responses to the rocky relationship with defendant. The court divided the blame for the termination of the marriage:

> This Court is persuaded that each party contributed to the break up of the marriage, a marriage more in name than in practice. Defendant was uncontrollably jealous of Plaintiff's attention and affection, be it to other male friends or to her children. Defendant drank alcoholic beverages to excess, often at social gatherings. This behavior heightened his jealousy, often resulting in verbal and physical assaults by Defendant on Plaintiff. . . .
>
>     . . . .
>
>     . . . Plaintiff contributed no money to the Hyde Park property and, in comparison to Defendant virtually no labor. Plaintiff was more interested in spending her time at the Darling Road residence with her children than in establishing a permanent home with Defendant. This Court is persuaded that Plaintiff was unable or unwilling to totally cut the emotional tie she felt for her ex-husband. She often showed more affection and concern for him than she did for

Defendant. Plaintiff made little or no attempt to hide her feelings in this regard from Defendant. While in no way does Plaintiff's behavior excuse or justify Defendant's assaults, Plaintiff's disregard for Defendant significantly contributed to the end of the marriage.

Citing defendant's "abusive behavior" and plaintiff's "behavior and lack of contribution," the court awarded each party a one-fourth interest in the Hyde Park property. The court expressly chose a valuation date near the date of the separation in June of 1986, yielding a total net equity for the four owners of $57,000, rather than a date closer to the date of the order. In doing so, it rejected use of an October 1988 appraisal proffered by plaintiff and showing a value of $87,000. Since defendant was to retain his interest in the property, the court ordered him to pay plaintiff the value of her share, which it calculated at $14,250. The court did not grant plaintiff's request for a larger share of the value of the Hyde Park residence, nor did it award her a share of the rental income derived from the property during the pendency of the case. The court's findings, conclusions and order do not address the tort claim of the plaintiff or the counterclaims of the defendant.

Plaintiff argues first that the trial court erred in failing to make findings and conclusions disposing of her amended complaint for assault and battery. Defendant responds that the trial court "basically found for the Plaintiff on the issue of assault, and provided her compensation for her damages by adjusting her interest in the homestead."

We start by considering whether the count of plaintiff's complaint which stated a cause of action for assault and battery was properly joined with the divorce action and, thus, was properly before the trial court.[1] The procedure in divorces is governed by V.R.C.P. 80. Subdivision (a) of that rule states that the Vermont Rules of Civil Procedure apply to divorce actions unless

---

[1] For purpose of this analysis, we assume, but do not decide, that the tort actions represented by the claims and counterclaims are appropriate between spouses. See *Richard v. Richard*, 131 Vt. 98, 106, 300 A.2d 637, 641 (1973) (interspousal immunity abolished only for claims arising out of a motor vehicle accident; "[w]hat other claims should be entertained by our courts arising between husband and wife must be left to future decisions").

otherwise provided in Rule 80. The general rule on joinder of claims is found in V.R.C.P. 18(a), which provides: "[a] party asserting a claim to relief as an original claim . . . may join, either as independent or as alternate claims, as many claims either legal or equitable or both as the party has against an opposing party." If Rule 18(a) applies in this context, it was proper to join the tort claim with the divorce claim in one action. For a number of reasons, we do not believe that Rule 18 applies in this instance.[2]

First, although Rule 80 does not specifically preclude the joinder of other claims in a divorce action, such a result can be inferred from the structure of the rule. The rule provides for a specific type of complaint and service. See V.R.C.P. 80(b). It specifically requires the plaintiff to prove a case even though the defendant fails to answer, thereby ensuring that defendant's rights are protected even in the absence of an answer. See V.R.C.P. 80(d). It limits the scope of counterclaims and provides for discovery, absent a showing of good cause, only on the issues of maintenance, maintenance supplement, support and counsel fees. See V.R.C.P. 80(f), (g). It requires a cooling-off period before the hearing can be scheduled where children are involved. See V.R.C.P. 80(h).

Two parts of the rule present difficulties in cases like this one. The counterclaim provision appears to preclude the counterclaims filed in this case, an unfair result if plaintiff is not similarly prohibited from joining her tort claim. See V.R.C.P. 80(f) (counterclaims limited to "cause for divorce or annulment of marriage"); Reporter's Notes, V.R.C.P. 80 ("other claims that would be compulsory under Rule 13(a) . . . may thus be asserted in a subsequent action"). The discovery provision does not authorize discovery as of right on the tort claim although dis-

---

[2] Since the amended complaint raised claims independent of the action for divorce, and the trial court did not address these claims in issuing its order, that order was not an entry of judgment from which an appeal could be taken. See V.R.C.P. 54(b); V.R.A.P. 3, 4. If nothing more were involved, we would dismiss the appeal forthwith for want of jurisdiction since it was not taken from a final order. However, under the particular circumstances of this case, such a step is unnecessary. We conclude that the trial court should have dismissed the assault and battery claims without prejudice as claims misjoined with the divorce action and in the interest of economy treat the appeal as having been taken from a final order.

covery would be routinely allowed on such a claim if filed independently. See V.R.C.P. 80(g). If discovery is allowed on the tort claim as of right, court control over discovery on nonmonetary issues in the divorce would be lost.

Further, our precedents are more consistent with the view that joining other claims with a divorce action is improper. The most important precedent is *Slansky v. Slansky*, 150 Vt. 438, 553 A.2d 152 (1988), where we ruled that a tort action between divorced spouses was not barred by res judicata because of the failure to raise the claim in the divorce. We relied on the New Hampshire Supreme Court's decision in *Aubert v. Aubert*, 129 N.H. 422, 426, 529 A.2d 909, 911 (1987), for the proposition that "a civil action in tort is fundamentally different from a divorce proceeding, and that the respective issues involved are entirely distinct." While we did not rule that the plaintiff could not adjudicate the tort claim in connection with the divorce proceeding,[3] the decision is consistent with such a rule.

We adopted a similar policy with respect to foreclosure actions, which are also governed by a separate rule. See V.R.C.P. 80.1. In *LaFarr v. Scribner*, 150 Vt. 159, 549 A.2d 651 (1988), we held that judgment of strict foreclosure is not res judicata with respect to liability in a later action for a deficiency judgment. As in the divorce context, the decision is grounded on the view that "a foreclosure action is separate and distinct from an action for a deficiency judgment." *Id.* at 161, 549 A.2d at 653. Although we held that Rule 80.1 did not require the joinder of the foreclosure claim with the request for a deficiency judgment, we did not rule on whether such a procedure is authorized. *Id.* at 160 n.*, 549 A.2d at 652 n.*.

We have been particularly concerned about the joinder of unrelated claims with juvenile CHINS cases, although such cases

---

[3] *Slansky* is complicated by the fact that the tort involved the change of beneficiary on a health insurance policy that could have been considered marital property, and by the presence of a property settlement agreement which was incorporated into the divorce decree. Defendant's claim was that plaintiff should have dealt with any claim concerning the change of beneficiary in the settlement agreement. Even with this close relationship between the tort claim and the divorce issues, and the presence of the agreement, this Court held that res judicata did not apply because the tort claim was not covered in the settlement agreement. 150 Vt. at 442, 553 A.2d at 154.

are governed by the Vermont Rules of Civil Procedure. See *In re J. R.*, 147 Vt. 7, 10, 508 A.2d 719, 721 (1986). We recently ruled in *In re M.C.P.*, 153 Vt. 275, 302–03, 571 A.2d 627, 641–42 (1989), that it was improper to join a collateral dispute between a sibling of the juvenile before the court and the state agency, SRS, into the CHINS proceeding. We emphasized in that case: "We believe that rigid adherence to the limits on the powers of the juvenile court expressed in the statute is necessary to ensure a single-minded focus on the juvenile before the court." *Id.* at 303, 571 A.2d at 642.

Finally, the relevant policy considerations weigh heavily against combining the tort action with the divorce. If we combine these claims, it will be difficult to protect the right to trial by jury while providing expeditious relief in the divorce action. We have adopted the rule of *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), that requires that related legal and equitable claims be tried first to jury on the legal claims to protect the jury trial right. See Reporter's Notes, 1985 Amendment, V.R.C.P. 39; *Merchants Bank v. Thibodeau*, 143 Vt. 132, 134–35, 465 A.2d 258, 260 (1983). If a jury trial had been requested in this case on the tort claim or counterclaims, we would have had to delay resolution of the divorce proceeding, with its claims that the domestic violence between the parties should be considered in determining the property disposition, until after the tort actions were tried to a jury. The delay could be intolerable, especially if the custody and visitation of children were involved. The better policy is to keep the actions wholly separate and resolve the divorce proceeding as expeditiously as possible.

We note that the better reasoned cases from other states have reached the conclusion that marital tort actions may not be joined into a divorce action. The Supreme Court of Utah, in *Lord v. Shaw*, 665 P.2d 1288, 1291 (Utah 1983), analyzed the issue as follows:

> We believe that divorce actions will become unduly complicated in their trial and disposition if torts can be or must be litigated in the same action. A divorce action is highly equitable in nature, whereas the trial of a tort claim is at law and may well involve, as in this case, a request for trial by

jury. The administration of justice will be better served by keeping the two proceedings separate.

See also *Noble v. Noble*, 761 P.2d 1369, 1371 (Utah 1988) (reaffirming *Lord* and noting that "if spouses have tort claims pending against each other which are likely to have a bearing on the outcome of the divorce action, those claims should be resolved prior to the divorce proceedings"); *Walther v. Walther*, 709 P.2d 387, 388 (Utah 1985) (tort claim award obtained in divorce action vacated under the rule in *Lord*). The Colorado Court of Appeals recently adopted the rule of *Lord*, reasoning as follows:

> Accordingly, we adopt the reasoning of the Utah and Arizona courts, and hold that the efficient administration of dissolution cases requires their insulation from the peculiarities of matters at law. The joinder of marriage dissolution actions with claims sounding in tort or, for instance, contract would require our trial courts to address many extraneous issues, including trial by jury, and the difference between the "amicable settlement of disputes that have arisen between parties to a marriage," and the adversarial nature of other types of civil cases.

*Simmons v. Simmons*, 773 P.2d 602, 604–05 (Colo. Ct. App. 1988) (citations omitted); see also *Windauer v. O'Connor*, 107 Ariz. 267, 268, 485 P.2d 1157, 1158 (1971) ("the peculiar and special nature of a divorce action speaks against the bringing of the two actions in one litigation"). Even where courts have found that joinder is technically possible, they have usually discouraged such joinder. See *Stuart v. Stuart*, 143 Wis. 2d 347, 352–53, 421 N.W.2d 505, 508 (1988).

■■ For the above reasons, we conclude that plaintiff's tort claim and defendant's tort counterclaims were improperly joined into the divorce action. Thus, we affirm the trial court's decision to render judgment without adjudicating these claims, although on different grounds from those urged by defendant and apparently used by the trial court.

Defendant next argues that the court erred in valuing the residence as of the date of the parties' separation, rather than the date of the hearing. In her January 23, 1989 request for findings, plaintiff specifically requested that the court use an

appraisal figure of $87,000, which plaintiff asserted was the fair market value as of that date. Defendant's requests for findings corroborated the $87,000 valuation figure as of September of 1988, but argued that a $60,000 value figure as of September 1986, shortly after the separation date of June 14, 1986, was the appropriate one.

We addressed the question of the appropriate date for property valuations in *Albarelli v. Albarelli*, 152 Vt. 46, 48, 564 A.2d 598, 599 (1989), where appellant questioned the trial court's use of appraisals more than a year old on the date of trial. Though the case was decided on other grounds, our dictum on the issue is on point for this case:

> As a general proposition, marital assets should be valued as close to the date of trial as possible. While our case law has not previously spelled out such a principle with specificity, we recently held that relying on a valuation of marital property conducted three years before trial constituted an abuse of discretion by the trial court. *Cleverly v. Cleverly*, 151 Vt. 351, 354–55, 561 A.2d 99, 101 (1989). We think that this principle is the one most consistent with the mandate of 15 V.S.A. § 751(a) that the trial court "equitably divide and assign the property," and the one that best promotes fairness in the imprecise task of setting valuations.

*Id.* (citations omitted). The trial court in the present case chose to rely on an appraisal performed more than two years before the date of the court's order—considerably older than the appraisal we rejected as stale in *Albarelli*.

Although the court chose the date of separation as the proper date for valuing the property, it gave no reason for its choice. Defendant argues that the valuation can be upheld because plaintiff's contribution to the Hyde Park residence was minimal and that the trial court's discretion should be respected. We do not believe that the respective contributions of the parties toward the Hyde Park house have any bearing on the question of the proper date for valuation. Under *Albarelli*, a property disposition that is based on an improper valuation must be reversed and remanded. While the $87,000 figure used by plaintiff is not contested by defendant, it was eight months old at the time of the trial court order and is now two years old.

On remand, the trial court should obtain as current a valuation as possible and amend its order accordingly. See *Cleverly v. Cleverly*, 151 Vt. 351, 354–55, 561 A.2d 99, 101 (1989). We see no reason to upset the general apportionment of property shares because of this error.

■ Since we are reversing and remanding for the limited purpose of updating the property valuation and amending the amount defendant must pay to plaintiff to buy out her interest in the property, we must consider plaintiff's next argument that the trial court abused its discretion in failing to award her a larger share of the Hyde Park property. Her argument consists of an itemization of defendant's abusive behavior to her, together with incredulity that the court equally divided the parties' interest in the property in light of the evidence that an analysis of "the respective merits of the parties" favored her. See 15 V.S.A. § 751(b)(12). In making this argument she ignores other statutory factors, particularly § 751(b)(10), which allows the court to consider the party through whom the property was acquired, and (b)(11), which sanctions consideration of "the contribution of each spouse in the acquisition, preservation, and depreciation or appreciation in value of the respective estates." It appears that the trial court weighed defendant's egregious conduct in the balance, on the one hand, against defendant's sole initial capital contribution and his largely single-handed renovation effort, plus the less culpable, but not insignificant, faults on plaintiff's side. Although the court does not recite the provision, its findings suggest that it also considered § 751(b)(2), the age and health of the parties, finding that defendant had sustained three heart attacks, was disabled, and would require a second open-heart operation. In this balancing, there is no hint in the trial court's opinion that physical violence was given less than its appropriate weight. If anything, there is an inference that, but for the violence, defendant might have received a larger share of the property that he purchased and renovated. The trial court has broad discretion in distributing marital property, and its judgment will not be disturbed unless its discretion was abused, withheld, or exercised on untenable grounds. See *Bendekgey v. Bendekgey*, 154 Vt. 193, 197, 576

A.2d 433, 435 (1990). We see no reason to disturb the exercise of discretion in the present case.

For the same reasons, we decline to disturb the trial court's refusal to require defendant to account for the amount of rental income received during the pendency of the matter in the trial court. The court found that "[a] family in need is presently renting the property for $150 per month plus utilities on a temporary basis." Plaintiff does not contest the defendant's assertion that he bore the cost of taxes, insurance, maintenance, and other expenses associated with the property during this period. There was no evidence as to any net profit or loss during this period, but it was within the trial court's discretion to exclude the effect of this marginal income in its consideration of the overall property award, having noted the amount involved and the nature of the rental.

*The property distribution is reversed and remanded for further proceedings consistent with this opinion. The decision below is otherwise affirmed.*