## Mary Tudhope v. Theodore Riehle

[704 A.2d 765]

No. 96-229

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Suntag, D.J., Specially Assigned**

Opinion Filed October 10, 1997

*Peter F. Langrock* and *Frank H. Langrock* of *Langrock Sperry &amp; Wool*, Middlebury, for Plaintiff-Appellant.

*Michael S. Brow* and *Alan F. Sylvester* of *Sylvester & Maley, Inc.*, Burlington, for Defendant-Appellee.

█ **Gibson, J.** Plaintiff Mary Tudhope appeals the superior court's order dismissing her complaint alleging that her ex-husband, defendant Theodore Riehle, had fraudulently induced her to accept a separation agreement later incorporated into the parties' final divorce order. Tudhope and Riehle dispute whether their agreement may be collaterally attacked on grounds of fraud, duress, and unconscionability in a tort action in superior court. We conclude that, under the circumstances presented here, the superior court correctly dismissed the suit as a belated collateral attack on the parties' divorce judgment.

Tudhope and Riehle married in 1979 and separated in 1990. One month before filing for divorce, they executed a separation agreement "to make arrangements in connection [with their upcoming divorce], including the settlement of all questions relating to their property rights." Under the stipulation, Riehle retained ownership of all assets in his name, but agreed to pay Tudhope $430,000, unless the parties settled on a larger sum before the divorce was finalized. In May 1990, at a hearing unattended by Tudhope, the family court granted the parties a divorce and incorporated most of the agreement's terms into its judgment order.

In January 1996, shortly before the limitations period was to expire, Tudhope filed suit in superior court, alleging that the separation agreement was unconscionable and obtained through fraud, deceit, and duress. She complained that (1) Riehle had virtual control over her decision-making ability during their relationship and continued to exert substantial control while they were negotiating the settlement agreement; (2) he fraudulently told her that the amount of property she would receive under the agreement was more than she would receive through a court distribution; and (3) he warned her that it was in her best interest to sign the agreement because she would ultimately get less money from him if she did not do so. Riehle moved to dismiss the action on the ground that the superior court lacked subject matter jurisdiction. See V.R.C.P. 12(b)(1). The court granted Riehle's motion, ruling that the claims should have been litigated before the family court in the original divorce action. On appeal, Tudhope argues that the superior court has exclusive jurisdiction over her claims of fraud and unconscionability, which sound in tort; therefore, according to Tudhope, the divorce decree is not res judicata

with respect to those claims, notwithstanding that the settlement agreement was incorporated into the decree.

■ When the family court was created, the Legislature amended the statute delimiting the superior court's jurisdiction so as to deny it jurisdiction over actions cognizable in the family court. 4 V.S.A. § 113 (superior court has original and exclusive jurisdiction over all original civil actions except "those made cognizable by . . . the family court"). The family court has exclusive jurisdiction over divorce proceedings, which includes the distribution of marital property. 4 V.S.A. § 454(4); 15 V.S.A. § 751(a). Within such proceedings, Vermont law allows — in fact, favors — agreements between divorcing parties to settle the distribution of marital property. *Bendekgey v. Bendekgey*, 154 Vt. 193, 197, 576 A.2d 433, 435 (1990); see *Kanaan v. Kanaan*, 163 Vt. 402, 413, 659 A.2d 128, 135 (1995) (record must demonstrate compelling reason for court not to accept parties' pretrial agreement). Such agreements are presumed to be fair, and will be set aside only upon a showing of fraud, unconscionable advantage, impossibility of performance, hampering circumstances beyond the parties' expectations, collusion, or duress. *Bendekgey*, 154 Vt. at 197-98, 576 A.2d at 435-36.

■■ Once the family court adopts a settlement agreement and incorporates it into the divorce order, the agreement becomes part of the judgment of the court and is assailable only through a motion to set aside the judgment. See *Viskup v. Viskup*, 149 Vt. 89, 90-91, 539 A.2d 554, 556 (1987) (divorce decree's property distribution is final and not subject to modification, absent circumstances recited in V.R.C.P. 60(b)); *Flynn v. Flynn*, 265 P.2d 865, 866 (Cal. 1954) (even if merger is not intended, incorporation of settlement agreement renders its validity res judicata in any later action attacking it); *Johnston v. Johnston*, 465 A.2d 436, 439 (Md. 1983) (accord); cf. *Manosh v. Manosh*, 160 Vt. 634, 634, 648 A.2d 833, 835 (1993) (mem.) (where settlement agreement was acknowledged but not incorporated into divorce order, family court had jurisdiction to consider wife's motion to reopen divorce on grounds that agreement was unconscionable); *Elmore v. Elmore*, 159 Vt. 278, 280, 617 A.2d 159, 161 (1992) (family court adopted parties' post-judgment agreement as its own determination by incorporating it into prior divorce order). Collateral attacks on the validity of the judgment are thereafter barred under principles of res judicata. *Hamilos v. Hamilos*, 465 A.2d 445, 448-49 (Md. 1983); e.g., *Lerman v. Lerman*, 148 Vt. 629, 629, 528 A.2d 1121, 1122 (1987) (mem.) (res judicata precluded father, who had opportunity to litigate

paternity in divorce action, from relitigating paternity in later child-support proceeding). The doctrine of res judicata protects both courts and parties from the burden of repetitive litigation, encourages reliance on judicial decisions, prevents vexatious litigation, and decreases the chances of inconsistent adjudication. See *Berlin Convalescent Ctr., Inc. v. Stoneman*, 159 Vt. 53, 56, 615 A.2d 141, 143-44 (1992).

Here, notwithstanding her protestations to the contrary, Tudhope's complaint is nothing more than a collateral attack on the divorce judgment, which should have been directed to the family court. The thrust of the complaint is that the family court's order incorporating the parties' settlement agreement is unconscionable because Riehle fraudulently convinced her to accept the agreement rather than let the family court decide how to divide their property. Putting aside her request for punitive damages, Tudhope concedes that the compensatory damages she seeks would be measured by the amount she should have received from the property distribution. Thus, Tudhope . is attacking the validity of the family court's judgment, and more specifically, its adoption of the parties' division of property.

 Tudhope contends that it would be fundamentally unfair to preclude her from collaterally attacking the divorce order because Riehle's fraud induced her to accept the agreement and thus prevented the family court from looking into the facts. The simple answer to this argument, of course, is that the proper avenue of relief is through a motion to set aside the judgment under V.R.C.P. 60(b), which balances the needs for both fairness and finality, and serves as a safety valve to the doctrine of res judicata. See *Cliche v. Cliche*, 143 Vt. 301, 306, 466 A.2d 314, 316 (1983) (Rule 60(b) is to be liberally applied to prevent injustice and hardship; for these reasons, doctrine of res judicata does not preclude litigant from making *direct* attack upon judgment under Rule 60(b) before court that rendered judgment).

Tudhope states that at the time she filed the instant complaint in superior court, the one-year period for filing a Rule 60(b) motion based on fraud had passed. This may be so, but the need for finality of judgments requires some time constraints on the filing of such motions, and we fail to see why Tudhope's allegations could not have been raised within a year of the divorce order. In any case, Tudhope could have sought relief under Rule 60(b)(6), which does not have a time limitation. Indeed, in *Cliche*, 143 Vt. at 306, 466 A.2d at 316, we upheld the trial court's decision to vacate a divorce judgment under

Rule 60(b)(6) on grounds that the settlement agreement, which had been incorporated into the final divorce order, was unconscionable.

We reject Tudhope's argument that she was entitled to file a collateral tort action in superior court under the principles established in *Slansky v. Slansky*, 150 Vt. 438, 553 A.2d 152 (1988), and *Ward v. Ward*, 155 Vt. 242, 583 A.2d 577 (1990). In *Slansky*, we held that an ex-husband was not barred from bringing a claim for conversion and breach of trust based on his former wife removing his and their children's names from an insurance policy not mentioned in the parties' property settlement agreement, even though he could have raised the issue during the prior divorce proceedings. 150 Vt. at 440-41, 442, 553 A.2d at 153, 154. In allowing the husband to bring his claims in a collateral action in superior court, we stated: "[P]laintiff is not attempting to relitigate the property distribution agreement adopted by the trial court in the final divorce decree; rather, he is asserting a unique claim sounding in tort that is separate and distinct from the divorce decree." *Id.* at 442, 553 A.2d at 154; see *Delahunty v. Massachusetts Mut. Life Ins. Co.*, 674 A.2d 1290, 1295 (Conn. 1996) (refusing to apply res judicata to preclude wife from bringing independent tort claim alleging that former husband had fraudulently converted and concealed life insurance policy; res judicata is flexible doctrine that must give way when its application would frustrate public policies more important than assuring finality in legal controversies).

In *Slansky*, we relied on *Aubert v. Aubert*, 529 A.2d 909, 912 (N.H. 1987), which held that an ex-husband was not precluded from bringing a personal injury action against his former wife based on a shooting incident during their marriage. 150 Vt. at 441, 553 A.2d at 154. The *Aubert* holding was based on the court's conclusion "that a civil action in tort is fundamentally different from a divorce proceeding, and that the respective issues involved are entirely distinct." *Aubert*, 529 A.2d at 911. This conclusion, in turn, stemmed from the court's belief that the type of relief available in a tort action is not available in a divorce action. *Id.* at 912. Citing both *Slansky* and *Aubert*, we held in *Ward*, 155 Vt. at 246-48, 583 A.2d at 580-81, that the divorcing parties' independent tort claims and counterclaims sounding in assault and battery were improperly joined in their divorce case.

Here, in contrast, although Tudhope labels her complaint a tort action, in fact she is attempting to relitigate the property distribution agreement that the family court adopted rather than asserting a

unique claim separate and distinct from the divorce decree. Cf. *Kinney v. Goodyear Tire & Rubber Co.*, 134 Vt. 571, 575-76, 367 A.2d 677, 680 (1976) (in determining relevant limitations period, courts look to substance of complaint — nature of alleged harm — rather than precise terminology of complaint). As the trial court concluded, Tudhope's claim is that she is entitled to more money than she received in the final divorce order, and thus this dispute is about the process of dividing marital property incident to a divorce. Accordingly, it belongs in the family court, not the superior court.

*Affirmed.*