Theodore M. RIEHLE, Jr. v. Mary TUDHOPE

[765 A.2d 885]

No. 99-289

December 13, 2000. Defendant Mary Tudhope appeals the family court's refusal to reopen the parties' divorce case based on her claim that the settlement agreement incorporated into the final divorce order was unconscionable. We conclude that the court acted within its discretion in denying the motion, and therefore affirm its judgment.

Tudhope and plaintiff Theodore Riehle were married in 1979 and separated in 1990. In January 1991, one month before filing for divorce, they executed a separation agreement requiring Riehle to pay Tudhope a lump sum of $430,000. In May 1991, the family court granted the parties a divorce and incorporated most of the terms of the agreement into the final judgment order. Five years later, in January 1996, Tudhope filed a complaint in superior court alleging that the separation agreement was unconscionable and obtained through fraud, deceit, and duress. In October 1997, we affirmed the superior court's dismissal of the action for lack of subject matter jurisdiction. *Tudhope v. Riehle*, 167 Vt. 174, 177, 180, 704 A.2d 765, 767, 768 (1997) (noting that motion for relief from judgment in family court is proper avenue of relief for challenging separation agreement that was incorporated into final divorce order).

In December 1997, Tudhope filed a motion in family court to reopen the divorce proceedings under V.R.C.P. 60(b)(6). Following a five-day hearing, the presiding judge submitted a draft decision for the assistant judges to review. The assistant judges disagreed with the presiding

judge's decision and filed their own "findings of fact," in which they purported to grant Tudhope's motion to reopen based on their conclusions that the division of property contained in the separation agreement was unconscionable, and that Tudhope acted within a reasonable time, given the extenuating circumstances, in bringing her Rule 60(b)(6) motion. One week later, the presiding judge filed his decision denying Tudhope's motion. In addition to making his own findings and conclusions, the presiding judge considered and accepted the assistant judges' findings, but nonetheless determined that Tudhope's motion should be denied. On appeal, Tudhope argues that the presiding judge erred in denying her motion in light of the assistant judges' findings, which, according to Tudhope, must be deemed the controlling findings of the court.

Even discounting her detour into superior court, Tudhope's efforts to overturn the separation agreement commenced nearly five years after the parties' divorce. Therefore, her only avenue of relief is V.R.C.P. 60(b)(6), which allows a court, upon such terms as are just, to relieve a party from a final judgment for any reason other than those set forth in the other sections of the rule, as long as the request for relief is made within a reasonable time. Although the grounds for relief under Rule 60(b)(6) are broadly stated, and the rule must be interpreted liberally to prevent hardship or injustice, interests of finality necessarily limit when relief is available. *Tudhope*, 167 Vt. at 178, 704 A.2d at 767; *Richwagen v. Richwagen*, 153 Vt. 1, 4, 568 A.2d 419, 421 (1989). Rule 60(b)(6) may not substitute for a timely appeal or provide relief from an ill-advised tactical decision or from some other free, calculated, and deliberate choice of action. *Richwagen*, 153 Vt. at 3, 4, 568 A.2d at 420, 421; *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 149 Vt. 365, 368, 543 A.2d 1320, 1322-23 (1988).

Rather, Rule 60(b)(6) is intended to accomplish justice in extraordinary situations that warrant the reopening of final judgments after a substantial period of time. *Moolenaar v. Government of Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987); see *United States v. Alpine Land & Reservoir, Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993) ("Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice.").

We have recognized that Rule 60(b)(6) may be applied to reopen a final divorce judgment incorporating an unconscionable separation agreement. See *Tudhope*, 167 Vt. at 178-79, 704 A.2d at 767-68; *Manosh v. Manosh*, 160 Vt. 634, 635, 648 A.2d 833, 835 (1993) (mem.); *Richwagen*, 153 Vt. at 3, 568 A.2d at 420; *Cliche v. Cliche*, 143 Vt. 301, 306, 466 A.2d 314, 316 (1983). But, apart from considerations of finality, requests for such relief must be sparingly granted because of our assumption that an agreement reached by the parties is preferable to one imposed by the courts. This policy is manifest in our strict standard for setting aside separation agreements even *before* the final divorce judgment is entered. See *Putnam v. Putnam*, 166 Vt. 108, 115, 689 A.2d 446, 450 (1996) (court is justified in setting aside court-approved separation agreement "where the normal boundaries of negotiation and compromise are exceeded"); *Kanaan v. Kanaan*, 163 Vt. 402, 413, 659 A.2d 128, 135 (1995) ("record must demonstrate a compelling reason for the court not to accept the parties' pretrial agreement"); *Nevitt v. Nevitt*, 155 Vt. 391, 399, 584 A.2d 1134, 1139 (1990) (trial court held separation agreement invalid, in part, because wife had signed agreement only after husband's threats of violence and physical force); cf. *Stalb v. Stalb*, 168 Vt. 235, 242, 719 A.2d 421, 426 (1998) (under New York law, antenuptial agreement will be overturned as unconscionable only if its terms would shock conscience of reasonable person). Finally, as

we have stated on numerous occasions, a Rule 60(b) motion "'is addressed to the discretion of the trial court and is not subject to appellate review unless it clearly and affirmatively appears from the record that such discretion was withheld or otherwise abused.'" *R. Brown & Sons, Inc. v. International Harvester Corp.*, 142 Vt. 140, 143, 453 A.2d 83, 85 (1982) (quoting *Zinn v. Tobin Packing Co.*, 140 Vt. 410, 414, 438 A.2d 1110, 1113 (1981)).

Mindful of these standards, we now examine the instant case. At the outset, we find no merit to Tudhope's contention that the assistant judges were entitled to make controlling determinations as to whether the separation agreement was unconscionable and whether her motion was filed within a reasonable time. Under 4 V.S.A. § 112, "questions of law shall be decided by the presiding judge" and "[m]ixed questions of law and fact shall be deemed to be questions of law." Furthermore, "[t]he presiding judge alone shall decide which are questions of law, questions of fact, and mixed questions of law and fact." *Id.* Here, the determinations as to whether the parties' agreement was unconscionable and whether Tudhope's motion was filed within a reasonable time are the ultimate conclusions that control the legal result. While these conclusions will certainly depend on the surrounding factual circumstances, they are at best, from Tudhope's perspective, mixed questions of law and fact to be resolved by the presiding judge. See *Bolduc v. Courtemanche*, 158 Vt. 642, 642, 603 A.2d 1129, 1130 (1992) (mem.) ("The conclusions to be drawn from the facts found are conclusions of law which are to be decided by the presiding judge."); cf. *Woodbury v. Woodbury*, 161 Vt. 628, 629, 641 A.2d 367, 368 (1994) (mem.) (custody determination is classic mixed question of law and fact requiring application of numerous facts to arrive at legal conclusion); *Debus v. Grand Union Stores of Vermont*, 159 Vt.

537, 546, 621 A.2d 1288, 1294 (1993) (no merit to defendant's argument that because motion for new trial turned upon examination of evidence as whole and involved court's factual evaluation of case, assistant judges should have been involved in ruling along with presiding judge).

Not only are the presiding judge's conclusions of law controlling, but his findings of fact are "without effect" only "to the extent that they are inconsistent with those of the assistant judges." *Bolduc*, 158 Vt. at 642, 603 A.2d at 1130. Thus, in determining whether the presiding judge abused his discretion in denying Tudhope's motion to reopen the divorce proceedings, we consider both the findings of the assistant judges and the findings of the presiding judge that are not inconsistent with those of the assistant judges.

In this case, notwithstanding the differing view of the assistant judges, Tudhope has not demonstrated that the presiding judge abused his discretion in denying her motion to reopen the parties' divorce judgment. Most of the assistant judges' findings of fact that were added to those of the presiding judge concerned incidents early in the parties' relationship, when Tudhope was a teenager and Riehle was in his forties. These findings do not state, as Tudhope suggests, that Riehle kept Tudhope from working and receiving an education, that he hid from her the true value of his assets, that he manipulated her to prevent her from getting an attorney, that he intimidated her into believing that she would fare worse if she went to court, and that he used threats to get her to accept the separation agreement. Moreover, none of the "unusual situations" listed by the assistant judges are inconsistent with the findings that led the presiding judge to conclude that the parties' separation agreement was not unconscionable and that Tudhope had failed to demonstrate extraordinary cir-

cumstances that would justify a five-year delay in seeking to reopen the divorce proceedings. Cf. *Woodbury*, 161 Vt. at 629, 641 A.2d at 368 (concluding that assistant judges' disagreement over some facts was not critical to presiding judge's decision).

Under the terms of the settlement agreement, Tudhope received $430,000 in cash from a marital estate estimated to be worth approximately $4 million. She also obtained an apartment building with $100,000 in equity. The presiding judge noted that the percentage of the estate going to Tudhope was larger than it appeared because of the low tax basis on the bulk of the marital assets, which resulted from the dramatic increase in value of the small island Riehle purchased in 1952 and the stocks that he inherited from his mother's estate. The presiding judge concluded that although Tudhope may have been able to obtain a larger percentage of the estate had she gone to court rather than accept the settlement agreement, the terms of the agreement were not unconscionable, given that (1) the parties had a relatively short-term marriage marked by extended periods of separation; (2) the cause of the break-up was Tudhope's desire to begin life anew and become involved with persons more her own age; (3) there were no children; and (4) nearly all of the marital assets were derived either from Riehle's acquisition before the marriage or from his mother's estate. See *Kanaan*, 163 Vt. at 413, 659 A.2d at 136 (fact that defendant may have negotiated more advantageous bargain is not ground to set aside otherwise valid agreement).

The court also pointed out that Tudhope had consulted with several attorneys between 1984, when she first considered leaving Riehle, and 1991, when she signed the separation agreement. In 1986, one of those attorneys submitted a demand on behalf of Tudhope in the amount of $500,000. Another attor-

ney, whom Tudhope consulted in the fall of 1990, three years after Riehle had transferred the apartment building to her, testified that Tudhope was driving the negotiations and was not intimidated by Riehle. That attorney apparently prepared an agreement calling for $405,000 in cash, but it was never executed. Approximately one week before signing the challenged separation agreement, Tudhope met with another attorney, who told her that she might be able to get more in court, but that the amount being offered was not unreasonable. Rather than litigate the divorce, Tudhope decided to take the apartment building and the $430,000 in cash. The presiding judge acknowledged testimony suggesting that Tudhope had difficulty making decisions, but concluded that there was no evidence indicating that Riehle manipulated or intimidated Tudhope into signing the agreement. Cf. *Harrigan v. Harrigan*, 135 Vt. 249, 250, 373 A.2d 550, 551 (1977) (upholding trial court's decision to disregard separation agreement dictated to wife by husband's attorney when wife "had no attorney, nor opportunity to consult one").*

Finally, the presiding judge found no extraordinary circumstances justifying Tudhope's five-year delay in bringing the

---

* The assistant judges found that "[a]t the time of the divorce proceedings and throughout the divorce process Mary did not have the benefit of legal counsel." This finding is clearly erroneous to the extent it suggests that Tudhope was without the benefit of legal counsel with respect to the separation agreement. Tudhope did not appear at the proceeding incorporating the parties' settlement agreement into the final divorce order, but, as noted above, she had consulted several attorneys over the years while negotiating the terms of the agreement, and indeed had consulted an attorney shortly before the agreement was incorporated into the final divorce order.

Rule 60(b) motion. See *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993) (to justify relief under Rule 60(b)(6), "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay"); *Alpine Land & Reservoir, Co.*, 984 F.2d at 1049 (relief is available under Rule 60(b)(6) "only where extraordinary circumstances prevented a litigant from seeking earlier, more timely relief."). None of the findings of the assistant judges, including those indicating that Tudhope had difficulty making decisions, compelled the presiding judge to conclude that Tudhope's five-year delay in seeking to reopen the divorce judgment was justified by extraordinary circumstances. See *Greenmoss Builders, Inc.*, 149 Vt. at 368-69, 543 A.2d at 1323 (test for determining whether trial court properly found that Rule 60(b)(6) motion had been filed within reasonable time is whether trial court exercised sound discretion given all factors and circumstances of case). In short, the family court's findings, including those of the assistant judges, support the presiding judge's determination that Tudhope's Rule 60(b)(6) motion should be denied because she failed to demonstrate that the parties' separation agreement was unconscionable and that she filed the motion within a reasonable time.

*Affirmed.*