Borden v. Rose, et al., Docket No. 361-10-05 Bncv (Wesley, J., Dec. 20, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**                       **BENNINGTON SUPERIOR COURT**
**BENNINGTON COUNTY, SS.**                 **DOCKET NO. 361-10-05 Bncv**

**JANE BORDEN (f/k/a Rose)**  )
                              )
    **VS.**              )
                              )
**JOHN ROSE, JULIUS**         )
**ROSENWALD, & B.S.**
**KRIMPETT, LLC**

### ORDER RE MOTION TO DISMISS

    **Introduction** - Plaintiff's complaint sounds in tort but it arises from

circumstances that were previously the subject of litigation in the Bennington Family

Court.  She claims damages for fraud and unjust enrichment, and invokes equity for the

imposition of a constructive trust on the real estate formerly occupied as a marital home

by herself and Defendant John Rose, her ex-husband.  She asserts this claim

notwithstanding the fact that each party's equity of redemption has been extinguished

by a foreclosure judgment, and the property has been purchased by Defendants

Rosenwald and Krimpett.  Defendants have moved to dismiss for failure to state a

claim, principally relying on the argument that any justiciable issue is vested solely

within the Family Court's jurisdiction.  As discussed below, the Court expresses grave

doubts that the Superior Court has subject matter jurisdiction over any of the claims

asserted against Defendant Rose. Furthermore, although technically vested with

1

jurisdiction over the claims against the other defendants, the Court questions whether the facts as plead are sufficient to sustain the causes of action alleged. However, inasmuch as the Court's reasoning expands upon any of the arguments in the memoranda and requires certain inferences that might be described as beyond the pleadings as presently framed, the Court invokes the provision of V.R.C.P. 12(b) appropriate to such circumstances, deferring a definitive ruling until "all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion b Rule 56". Nonetheless, the Court writes presently at some length in an effort to apprise the parties of its concerns regarding the claims based on the record made thus far, thus affording an opportunity to bolster the record as contemplated by V.R.C.P.(e) and to supply additional legal authorities addressing the issues set forth below.

**Factual Background** - Taking all well-plead facts as true, Defendant Rose resided in the former marital home in Pownal after he and Plaintiff separated and throughout their divorce proceedings. He remained responsible for the mortgage payments. At the time the parties were negotiating a final stipulation, Defendant Rose "made affirmative representations that the mortgage payments had been re-negotiated, a payment plan had been agreed upon between him and Inter-State Federal Savings...and that the entire legal action was in abeyance." Complaint at ¶10. Nevertheless, as he was aware, Defendant Rose did not make a "repayment agreement" nor was the foreclosure action ever in abeyance. Plaintiff claims to have relied on these false representations as to the status of the foreclosure matter when she entered into a final stipulation for a divorce decree. By the terms of that decree, Defendant Rose was awarded title to the marital home, subject to a provision for

2

dividing any equity at the time the parties youngest child reaches 18 or graduates from high school.  The portion of the decree related to property settlement recites as to the foreclosure proceedings:

> The matter is currently in abeyance.  Should judgment be entered in the said complaint or any complaint for foreclosure the property shall be immediately listed for sale with Hoisington Realty or any other reputable realtor as agree upon by the parties at a price set by the Realtor and any offer within 5% of said listing must be accepted by the parties.  If the property is sold as the result of a foreclosure judgment, Defendant, Mr. Rose shall be solely responsible for all fees associated with the foreclosure resulting from his failure to pay on the mortgage. Notwithstanding the above, Mr. Rose is solely responsible for and shall hold Ms. Rose harmless from any and all expenses related to the marital residence since the date of separation on or about February 5, 2001. Such expenses may include, but are not limited to, taxes , principal, interest on the mortgage payment.

On June 4, 2002 Inter-State obtained a judgment by default in the mortgage proceedings.  The Court infers from the pleadings that Plaintiff was unaware of this fact at the time of the divorce in November, 2002, notwithstanding the recitation in the decree that there was a foreclosure proceeding pending.  On the present state of the pleadings, however, the Court does not construe the complaint as alleging that Defendant Rose did any act, fraudulently or otherwise, that prevented Plaintiff from becoming aware of this matter of public record.  The complaint is likewise silent as to whether either party invoked the provisions in the divorce decree which specified a procedure for attempting to effectuate a sale in the event of foreclosure - an event which in fact had already occurred at the time of the divorce decree.  Nevertheless, if such efforts were made they were unavailing.  The six month period of redemption expired shortly after the divorce was final without the equity being redeemed by payment of the amount established by the foreclosure accounting, and Inter-State took

3

title to the property on December 20, 2002.

The allegations as to the other defendants are spare. On March 3, 2003, Defendant B.S.Krimpett, LLC purchased the property from Inter-State for the sum of $68,639.60, "believed to be the amount of the payoff of the loan." Complaint at ¶ 19. Krimpett is a business entity of unknown origin believed to be closely associated with Defendant Rosenwald. Defendants Rosenwald and Rose are familiar with one another. Defendant Rose continues to reside at the property and pay rent. On the present state of the pleadings, the Court does not consider it a reasonable inference in the absence of explicit allegations to such effect that the other defendants acted in furtherance of any claimed conspiracy at any time prior to Inter-State's acquisition of the subject property.

### Discussion

**a) Procedural History and Legal Context** - Defendants Rosenwald and Krimpett were first to file their motion to dismiss, a two page document that recites the statutory authority for Family Court jurisdiction, 4 V.S.A.§454, observes that all Plaintiff's claims spring originally from the Family Court stipulation and decree, and asserts without further discussion that subject matter jurisdiction is plainly absent. Defendants do not address the fact that the claims against them are conspiracy to defraud, or that they were not parties to the Family Court proceedings, nor suggest how these claims could have been brought in Family Court. Shortly after Rosenwald and Krimpett sought dismissal, Defendant Rose filed a similar request incorporating the earlier arguments by reference with no additional briefing.

Plaintiff opposed the motion to dismiss claiming that all her claims "against all

4

Defendants are unique and separate ...from any matters related to the Final Order for Divorce".  She cites <u>Demgard v. Demgard</u> 173 Vt.526 (2001) and <u>Slansky v. Slansky</u>, 150 Vt. 438 (1988) for the proposition that certain causes of action between former spouses will support separate claims in Superior Court, even if they arose during the marriage and could also have been relevant to claims in the divorce proceedings. Defendants Krimpett and Rosenwald respond that the circumstances here are far more analogous to <u>Tuthope v. Riehle</u>, 167 Vt. 174 (1997) in which the dismissal of a Superior Court suit claiming fraudulent inducement during the negotiation of a final divorce stipulation was upheld as an impermissible collateral attack on the divorce decree; (although Defendant Rose has made no additional filings beyond his initial adoption of the arguments of the other defendants, the Court treats all arguments raised by Defendants Rosenwald and Krimpett as applicable to Rose's motion to dismiss). Plaintiff has not addressed how <u>Tuthope</u> is distinguishable from her claim.  As to the complaint against Defendant Rose, the Court does not believe that it can be on the record presently established.

In <u>Slansky</u>, the parties had been divorced by a stipulated decree that vested each with the property then in that person's name.  Although no specific mention was made of the health insurance policy, it was undisputed that at the time of the divorce Mr. Slansky knew that the policy had been changed into Ms. Slansky's name alone excluding him from any coverage.  Nonetheless, only a few months after the divorce was final, Mr. Slansky brought a Superior Court action for fraudulent conversion alleging that he had provided the funds for the policy prior to the separation expecting that it would name the entire family as insureds, that Ms. Slansky put the policy in her

name alone without his knowledge, and that as a result he had been unable to obtain insurance coverage for a health condition that subsequently developed.  The Superior Court granted defendant's motion for summary judgment concluding that the issue was *res judicata* since it could have been raised in the divorce action.  While the Supreme Court acknowledged that "the dispute concerning the insurance policy was clearly at issue during the parties' negotiations" in the divorce action, and that "it might have been a more prudent course to have expressly reserved the issue in the property distribution agreement", it nevertheless refused to extend *res judicata* to bar "a unique claim sounding in tort that is separate and distinct from the divorce decree." Id. 150 Vt. at 441-42.

By its analysis in Tuthope, the Court distinguished Slansky.  Tuthope was decided after the creation of the Family Court during which the Legislature delimited the Superior Court's jurisdiction so as to preclude it from considering actions cognizable in the Family Court.

 4 V.S.A.§113.  Thus, the Court upheld dismissal of Ms. Tudhope's Superior Court complaint against Mr. Riehle, her ex-husband, by which she alleged that he had procured her consent to a stipulated divorce decree by unconscionable means including fraud, deceit and duress.  The Court ruled that a settlement agreement incorporated into a divorce decree "becomes a part of the judgment of the court and is assailable only through a motion to set aside the judgment." Id. 167 Vt at 177.  The Court rejected the argument that the plaintiff's attempt at a collateral attack on the divorce was covered by the principles discussed in Slansky.  Looking to the "substance of the complaint" rather than the "precise terminology" of the tort label, the Court concluded

6

that Tudhope was "attempting to relitigate the property distribution agreement that the family court adopted rather than asserting a unique claim separate and distinct from the divorce decree". Id. at 179-80.

The parameters of what constitutes a "unique claim" sufficient to avoid the preclusive effect of a divorce decree are further refined by Demgard. In that matter, Mr. Demgard filed a Superior Court claim seeking contribution from his ex-wife for payments he had made on a promissory note the parties had executed prior to their divorce. The divorce decree had issued after a contested hearing, but made no specific disposition of the parties marital debts and omitted any mention of the promissory note. Although Ms. Demgard argued that issues regarding the note had been the subject of a portion of a memorandum filed prior to the divorce trial, the Supreme Court found nothing in the record to support the conclusion that the Family Court had ever been presented with evidence as to the debt so as to incorporate consideration of it into the division of the marital estate. Furthermore, the Court noted that under 4 V.S.A.§453(a) "Vermont statutes governing divorce proceedings do not obligate the family court to allocate responsibility for marital debt absent the parties' invocation of the court's equitable jurisdiction to do so." Id. 173 Vt. at 528. Tuthope was distinguished because it involved a collateral attack on a property stipulation incorporated into the divorce decree by consent of the parties, whereas the claim for equitable contribution between the Demgards was not required to have been presented to the Family Court which, in fact, had never considered it during the trial on the merits. By this reasoning, the Court found it "a unique and separate claim from the property division in the final divorce judgment", and thus "cognizable in superior court". Id.

**b) Claims against Defendant Rose** - Notwithstanding her conclusory insistence to the contrary, Plaintiff's claim against her ex-husband does not appear to be "unique and separate" from the divorce judgment but rather constitutes a direct attack on the consent decree, seemingly indistinguishable from the situation in Tuthope.  As Defendants note, Plaintiff's complaint specifically alleges that "Defendant Rose fraudulently induced the Family Court into signing a Final Order of Divorce", Complaint at ¶16, the exact claim rejected in Tuthope as an impermissible collateral attack. Indeed, absent the further development of facts to support the contention, the Court would find it hard to accept Plaintiff's argument  that because her ex-husband "no longer retains an ownership interest in the subject property, the family court would have little or no mechanism available to it to adjudicate the issues raise in Plaintiff's Complaint and the relief requested".  Rather, as in Tuthope, the conclusion would appear inescapable that Plaintiff is bound by the settlement she made, and that any means of relief ought to have been either a petition to enforce the settlement agreement regarding the rights provided relative to the foreclosure proceeding, or a timely motion to set aside the consent decree.

Significantly, the decree discloses no absolute reliance on the recitation that the foreclosure action was "in abeyance", the core element of Plaintiff's claim for misrepresentation. Although the stipulation and decree charge Defendant Rose with responsibility for the mortgage payments, they make no explicit provision as to how the foreclosure action must be resolved. Instead, the stipulation expressly contemplated the prospect that judgment could "be entered in the said complaint or any complaint foreclosure", making particular provision for a method by which the property could be

8

"sold as the result of a foreclosure judgment." Given the contingencies contemplated by the divorce decree regarding the pending foreclosure action, Plaintiff must be charged with the duty of taking reasonable steps to protect her inchoate interest in any equity in the marital home, which plainly could not materialize except for the resolution of the foreclosure. Assuming as Plaintiff alleges that the balance to satisfy the mortgage was almost $70,000, the prospect of having to sell the home to save any potential equity was palpable at the time of the final divorce decree. Yet, for all that appears from the complaint, Plaintiff apparently claims reliance on the asserted state of "abeyance" for having remained uninformed as to the entry of default in the foreclosure, the establishment of the period of redemption scheduled to expire within a matter of weeks, and the subsequent expiration of that period and transfer of title to the mortgagee.

Each of the parties was represented by counsel at the time of the divorce (including Plaintiff's representation by her current attorney). The foreclosure action had been pending since before April 2002 at the time the divorce was settled in November 2002. From its attempts to parse the limited history presented by the pleadings, the Court is left with the disquieting prospect that at the time of the divorce decree neither Plaintiff, nor counsel, was aware of the default judgment more than five months earlier that had triggered the running of the redemption period set to expire less than a month hence. If that is the case, however, claiming that Defendant misrepresented the nature of any state of "abeyance"in the foreclosure proceedings does not make out actionable misrepresentation, as the Court presently understands the law. See,Winton v. Johnson & Dix Fuel Corp. 147 Vt. 236, 241(1986)(misrepresentations as to a matter of law are not actionable "where it is clear... from facts about the relationship of the parties that

9

reliance should only follow an independent inquiry"). As a party to the action whose existence she acknowledged in the divorce stipulation, Plaintiff and her counsel must be charged with knowledge of its status which would have been disclosed by a simple inquiry to the court clerk. In any event, since no express provision was made in the decree for how the parties expected the foreclosure claim would be resolved, except by the eventual need to sell the house, Plaintiff surely must have been advised that her potential rights under the divorce decree would require vigilance regarding the foreclosure suit.

Under the circumstances presented, it is unclear whether there were any remedies in either the divorce proceedings or the foreclosure proceedings by which Plaintiff could have forestalled the loss of the house. However, by the exercise of reasonable prudence either before or after the divorce decree, she might have enforced the remedy specifically bargained for in the divorce settlement - sale of the house - or, to the extent she was able to demonstrate other prejudice flowing from claimed misrepresentation, grounds for seeking to have the divorce decree vacated. That she allowed the time for exercising her potential remedies to lapse without asserting them does not strengthen her present claim of for a "unique and separate" action. Tuthope, 167 Vt. at 178 (superior court action not justified by expiration of period for seeking post-judgment relief in divorce proceeding since such limits are consistent with the need for finality of judgments).

**c) Claims against Defendants Krimpett and Rosenwald** - By the foregoing analysis, the Court presently believes that the fundamental claim that Defendant Rose's misrepresentations regarding the status of the foreclosure action tainted the divorce

10

decree is *res judicata* as regards the complaint against him. However, contrary to the briefing of the other defendants, reliance on Tuthope alone is insufficient to afford the basis for dismissal of the claims against them. As that opinion notes, "the type of relief available in a tort action is not available in a divorce action." Id, 167 Vt. at 179. Thus, since the claim for conspiracy to defraud could not have been joined with the original divorce, the decree in that action cannot have preclusive effect with respect to the complaints against the other defendants. Nonetheless, although not deprived of subject matter jurisdiction, this Court doubts that Plaintiff has plead sufficient facts to state a cause of action on which relief could be granted as to the other defendants.

Plaintiff alleges in Count I that Defendants Rosenwald and Krimpett "conspired to de-fraud Plaintiff of her rightful portion of the marital home". In Count II, she alleges that those other defendants "will be unjustly enriched should they receive the entire portion of the value of the subject property", and on that basis she invokes by her Count III an equitable entitlement to the remedy of a constructive trust. As previously noted, the facts already discussed with respect to Plaintiff's complaint against Defendant Rose do not presently permit the inference that he engaged in any act of conspiracy with the other defendants prior to the judicial transfer of title to the property to Inter-State. Thus, the allegations supporting Plaintiff's additional claims against the other defendants are decidedly meager. They are limited to: i) Defendant Krimpett purchased the property from the judgment holder in the foreclosure action for an amount equal to what would have been necessary to redeem, presumably well below fair market value; ii) Krimpett is closely associated with Defendant Rosenwald, who is familiar with Defendant Rose; iii) Defendant Rose never moved from the property, and now pays rent to Krimpett

and/or Rosewald as agent for Krimpett.  These facts are plainly insufficient to establish either a conspiracy to defraud or unjust enrichment.

The parties have yet to brief the elements of an action for civil conspiracy, but the Court's research discloses scant jurisprudence from the opinions of the Vermont Supreme Court; see, e.g. Schwartz v. Frankenhoff 169 Vt. 287 (1999)(no court will accept conclusory allegations of a conspiracy, without more, as sufficient to establish personal jurisdiction over an alleged member of the conspiracy), State v. Heritage Realty of Vermont 137 Vt. 425 (1979)(state's evidence insufficient to show anything more than similar prices reached independently which would not support the agreement elemental to an illegal price-fixing conspiracy, but summary judgment was premature in light of State's petition for additional discovery).  As described in 16 Am Jur2d ,Conspiracy §50, the definition of a civil conspiracy is "a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose", with "the essence of civil conspiracy" being a claim for damages.  But there "can be no conspiracy where the acts complained of, and the means employed in doing the acts, are lawful." As to elements, a civil conspiracy "requires an object to be accomplished, a meeting of minds on the object or course of action, one or more overt acts, and damages as a proximate result thereof." Id., §51.

In this case as plead, there are neither factual allegations, nor reasonable inferences to be drawn from them, sufficient to establish any claim  of an unlawful agreement, or acts taken in furtherance of it. Plaintiff does not allege that the defendants plotted in concert at the time of the divorce to deprive her of any hope of  realizing her share of the equity in the home.  In any event, no such agreement could have

succeeded had Plaintiff invoked her right to compel a sale of the house, the free exercise of which was unimpeded by the acts of any of the defendants as far as can be inferred from the allegations of the complaint. Furthermore, even assuming Defendant Rose's misstatement about the nature of the foreclosure "in abeyance" had been actionable, the link between such misrepresentation and the later acts of the other defendants are too attenuated to demonstrate any resulting damage to Plaintiff's interests. As already discussed, such proximate cause as against Defendant Rose is dubious, even had it been properly raised in the Family Court, because Plaintiff failed to resort to remedies available to her under the divorce decree. As to the other defendants, the linkage is so indistinct as to disappear on the current state of the record. Simply put, no nefarious purpose can reasonably be inferred from the allegations against Defendants Krimpett and Rosenwald. They bought a property from a foreclosing creditor at a bargain price, in itself an unnoteworthy event. They then made an unspecified arrangement with the prior owner to continue to occupy the premises presumably involving rent. Each of these events can be explained in terms of commercially reasonable behavior, and without additional allegations that plainly frame them as unlawful, there can be no conspiracy.

By similar reasoning, Plaintiff has failed to allege facts showing unlawful actions by either Defendant Krimpett or Rosenwald that proximately caused damage to Plaintiff by way of unjustly enriching those defendants. The allegations of the complaint show no more than that Defendants realized a possible bargain by purchasing the property from a foreclosing creditor typically anxious to eliminate a losing investment from its portfolio. In this regard, it must be noted that long-established authority supports Vermont's

13

tradition of strict foreclosure, though in circumstances such as this one it can produce the harsh consequence of the liquidation of significant equity lost to mortgagors who fail to redeem. See, <u>Aldrich v.Lincoln Land Corp.</u>, 130 Vt. 372 (1972)(the right of redemption is the device that removes a foreclosure from the condemnation of a forfeiture), <u>Dieffenbach v. Attorney General of Vermont</u>, 604 F.2d 187 (2nd Cir, 1977)(upholding the constitutionality if Vermont's strict foreclosure statute).

Based on the foregoing, it is hereby **ORDERED**: The Court will defer further ruling on Defendants' Motions to Dismiss pending an opportunity to develop the record pursuant to Rule 56 in light of the discussion in this opinion. The parties shall consult with respect to an appropriate discovery schedule and file a stipulation with the Court no later than January 6, 2006, which shall specify a deadline for the completion of all written discovery and depositions. Supplemental memoranda shall be filed within 20 days after the close of discovery.

DATED December 20, 2005, at Bennington, Vermont.

                                          _____
John P. Wesley
Presiding Judge